No. 23-35414

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

MICKEY FOWLER, LEISA MAURER, and a
class of similarly situated individuals,

*Appellants/Plaintiffs,*

v.

TRACY GUERIN, Director of the Washington State
Department of Retirement Systems,

*Appellee/Defendant.*

APPELLANTS' EXCERPTS OF RECORD
VOLUME 1 OF 2

DAVID F. STOBAUGH
STEPHEN K. STRONG
ALEXANDER F. STRONG
Stobaugh & Strong, P.C.
126 NW Canal Street, Suite 100
Seattle, WA 98107
Telephone: (206) 622-3536
Facsimile: (206) 622-5759
*Attorneys for Appellants/Plaintiffs*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICKEY FOWLER, et al.,

                           Plaintiffs,

        v.

TRACY GUERIN, Director of the
Washington State Department of
Retirement Systems,

                           Defendant.

CASE NO. 3:15-cv-05367-BHS

ORDER

THIS MATTER is before the Court on the parties' cross-motions for summary

judgment on the applicability of Defendant Director Tracy Guerin's limitations period

affirmative defense to Plaintiff Mickey Fowler's[1] § 1983 takings claim, Dkts. 98 and 103.

## I.  SUMMARY

Fowler represents a class of Washington teachers who transferred from one state

retirement plan, Teachers Retirement System (TRS) Plan 2, to a later plan, TRS Plan 3,

---

[1] The named plaintiffs are Mickey Fowler and Leisa Maurer (formerly husband and wife)
as representatives of a class of some 23,000 similarly situated teachers. This order uses the
singular, masculine "Fowler" for clarity and ease of reference.

prior to January 20, 2002. Dkt. 85 at 4–5. He asserts that the Department of Retirement Systems (DRS) failed to properly account for the daily interest he had earned on his Plan 2 retirement funds when he transferred those funds to Plan 3. He sued in June 2015, asserting a single 42 U.S.C. § 1983 takings claim for violation of his Fifth Amendment rights. Dkt. 1.

The Director argues that Fowler's claim is time-barred as a matter of law. She correctly asserts that the applicable limitations period is three years. Because the alleged taking occurred, and Fowler's § 1983 claim accrued, far more than three years before he brought this suit, his claim is facially time-barred.

Fowler argues that the limitations period on his takings claim was equitably tolled or otherwise does not apply, based on the circuitous and complicated history of his claim. He emphasizes that the Director repeatedly and, until 2018, successfully argued that his takings claim was not yet ripe, because the Director had not completed her rulemaking process.

The story of Fowler's takings claim began in 2005, and it includes litigation in Thurston County Superior Court, the Washington Court of Appeals, this Court, the Ninth Circuit, and the Washington Supreme Court. It has been detailed in this Court's prior orders and in various appellate opinions over time, though not in the context of the Director's limitations period affirmative defense. The Court will therefore recite much of it again.

//

//

ER-003

## II. BACKGROUND

The dispute involves a class of Washington State teachers asserting that the DRS unlawfully failed to pay them daily interest on their retirement account balances when they transferred from TRS Plan 2[2] to TRS Plan 3, prior to January 20, 2002. Fowler contends that most class members transferred in 1996–1997. Dkt. 1 at 7.

Fowler's predecessor, Jeffrey Probst, sued in Thurston County Superior Court in 2005, asserting that the DRS violated Washington statutes and its fiduciary duties when it failed to properly account for the interest accrued on balances transferred[3] into the new TRS Plan 3. The Superior Court dismissed the case because the DRS had authority to calculate interest as it did, and did not act in an arbitrary and capricious manner. *Probst v. Wash. State Dep't of Ret. Sys.*, 167 Wn. App. 180, 185 (2012) ("*Probst I*"). Fowler[4] appealed, and Division Two of the Washington Court of Appeals reversed, holding that the DRS's rule failed to appropriately consider whether to account for daily interest, and its adoption of the rule was therefore arbitrary and capricious. *Id.* at 193–94. It declined to reach Fowler's "constitutional takings argument," having resolved the case on other grounds. *Id.* at 183 n.1.

---

[2] Plan 2 is a defined benefit plan, while Plan 3 is part defined benefit and part defined contribution. The defined benefit portion of Plan 3 is one half of the benefit in Plan 2.

[3] The DRS rule that was the subject of the state court action provided that if an account had a "zero balance" at the end of a given quarter, it would receive zero interest for that entire quarter. Dkt. 18-1 at 20–21. Fowler's Plan 2 account showed a zero balance at the end of the quarter in which he transferred to Plan 3, and thus did not earn any interest in that quarter, even though he had a positive balance in his account for some portion of it. *See id.* at 51.

[4] A portion of the Superior Court class action settled in 2008, and in 2009 Fowler became the named plaintiff for the subset of the class claims—those relating to transfers prior to January 20, 2002—which did not settle. *See Probst I*, 167 Wn. App. at 184.

ER-004

1    The Superior Court in turn remanded the action to the DRS for additional

2    rulemaking under the Administrative Procedures Act (APA), consistent with the Court of

3    Appeals' *Probst I* opinion. Fowler read *Probst I* as requiring the Superior Court to itself

4    determine the interest owed and asked the Court of Appeals to recall its mandate. Fowler

5    also appealed the Superior Court's order.

6        The Court of Appeals declined to recall its mandate, and its unpublished opinion

7    addressed the "only issue properly before [it]": whether the Superior Court had abused its

8    discretion by remanding the action to the DRS under the APA and *Probst I*. *Probst v.*

9    *Wash. State Dep't of Ret. Sys.*, 185 Wn. App. 1015, 2014 WL 7462567, at *1, 2 (Dec. 30,

10   2014) ("*Probst II*"). Division II concluded that it had not. It explained that Fowler

11   misconstrued *Probst I*, that the Superior Court correctly ruled that the APA applied, and

12   that it properly remanded the action to the DRS. *Id.* at *6.

13       It also explained that Fowler's alternate argument[5]—that the "retroactive

14   application of a new rule that does not use the common law daily interest rule *will* result

15   in an unconstitutional taking"—was speculative, because "the DRS has not made or

16

17

18       [5] It remains unclear whether Fowler's initial state court complaint expressly asserted a
     takings claim under the Washington or United States constitutions, or whether he later asserted
19   that the Director's conduct amounted to a taking. Both state Court of Appeals' opinions describe
     Fowler's taking position as an argument, not a claim. *Probst I*, 167 Wn. App. at 182 n.1; *Probst*
20   *II*, 2014 WL 7462567, at *6. Fowler emphasizes that, in 2009, in his very first brief in state
     court, he asserted that the Fifth Amendment prohibited the Director from appropriating accrued
21   interest. Dkt. 169 at 6. The Court concludes that, for purposes of this case, it does not matter
     whether he asserted such a claim in state court.

22

ER-005

applied a new rule resulting in an unconstitutional taking." *Id.* at *1, 6 (emphasis added). It affirmed the Superior Court's remand.

Six months later, on June 1, 2015, Fowler sued DRS Director Guerin in this Court, expressly asserting a 42 U.S.C. § 1983 takings claim for violation of the Fifth Amendment, as applied to the states through the Fourteenth Amendment. Dkt. 1 at 11. His complaint recites the history above, and explains that he is suing here because he disagrees with the state courts' treatment of his takings claim:

> For years Plaintiffs have sought relief in the Washington state court system. The Thurston County Superior Court and the Washington Court of Appeals have both declined or refused to consider Plaintiffs' Takings claim. Although the seizure of property occurred almost 20 years ago, the Washington Court of Appeals said it was "premature" to resolve Plaintiffs' Takings claim.

*Id.* at 2.

Director Guerin moved for summary judgment on Fowler's claim, arguing it was (1) barred by the Eleventh Amendment; (2) barred by the *Rooker-Feldman* doctrine; (3) barred by issue or claim preclusion; (4) not ripe for review; and (5) meritless as a takings claim because the teachers were not entitled to daily interest. Dkt. 14.

This Court agreed that the claim was not yet ripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), because the administrative remedy—the DRS rulemaking—was, at that time, ongoing. Dkt. 28 at 6–7. It, like the parties, viewed the claim as a regulatory takings claim. It dismissed Fowler's claim without prejudice as prudentially unripe. *Id.* at 7.

Fowler appealed and, just before oral argument, the DRS's new, 2018 rule went into effect. *See* WAC 415-02-150 (2018). The new, retroactive rule[6] confirmed the prior, non-daily interest calculation: "Your individual account does not 'earn' or accrue interest on a day by day basis." WAC 415-02-150(5) (2018).

The Ninth Circuit reversed this Court's order dismissing the case on ripeness grounds, concluding that the "DRS's withholding of the interest accrued on the Teachers' accounts constitutes a *per se* taking to which *Williamson County*'s prudential ripeness test does not apply." *Fowler v. Guerin*, 899 F.3d 1112, 1118 (9th Cir. 2018). It explained the well-established common law that the right to daily interest is a property interest "protected by the Takings Clause regardless of whether a state legislature purports to authorize a state officer to abrogate the common law." *Id.* at 1118–19.

Given the length of time the case had been "held up in the courts," the Ninth Circuit also addressed the Director's other summary judgment arguments. *Id.* at 1118. It specifically held that "the Teachers state a takings claim for daily interest withheld." *Id.* at 1119. It rejected the argument that Fowler's claim was barred by issue preclusion or *Rooker-Feldman*, because the state courts did *not* adjudicate any takings claim asserted there. *Id.* It also rejected the Director's Eleventh Amendment defense, because the money at issue belonged to the teachers, not the state. *Id.* at 1120. The Ninth Circuit remanded

---

[6] The Director issued another new rule in 2022. It does provide for daily interest on TRS Plan 2 individual accounts, but is silent on retroactivity. *See* WAC 415-02-150(3) (2022). Fowler argues that the new rule reflects the Director's acknowledgment that the failure to pay such interest is an unconstitutional taking. Dkt. 166 at 9. He does not discuss the new rule's impact on his claim or his damages.

ER-007

the case to reconsider class certification, and to permit discovery, if necessary, before

deciding if the class should be given injunctive relief. *Id.* at 1120–21.

On remand, this Court certified the following plaintiff class:

> All active and retired TRS members who: (1) were previously members of
> TRS Plan 2 and (2) transferred from TRS Plan 2 to TRS Plan 3 prior to
> January 20, 2002.

Dkt. 58 at 10. On Fowler's motion, the Court refined this definition in January

2021, and the class consists of "[a]ll teachers who transferred from TRS Plan 2 to

TRS Plan 3 prior to January 20, 2002." Dkt. 85 at 5–6.

Meanwhile, the Director sought and obtained (over Fowler's objection) leave to

amend her Answer to assert that, if the teachers' per se takings claim was ripe, it was

barred by the applicable three-year limitations period. Dkts. 78, 80, 85. The Court

rejected Fowler's claims that the Director had already litigated and lost the limitations

defense in state court, that the Ninth Circuit's limited remand did not allow for a new

defense, and that she was judicially estopped from asserting that the takings claim was

untimely after asserting in state court for years that his takings claim was not yet ripe.

Dkts. 80, 85. His argument here is a variation on this latter point.

The Director moved for summary judgment on her limitations period affirmative

defense. Dkt. 98. Fowler also sought summary judgment on the Director's limitations

period affirmative defense. Dkt. 103. He argued that the limitations period was tolled by

the state court filing, that the state court already ruled that the claim was timely (and that

ruling is the law of the case), and that the limitations period was equitably tolled in the

interest of justice. *Id.*

The Court concluded that Fowler had established a takings claim, but that his only viable theory to avoid the conclusion that his claim was time-barred was the application of equitable tolling. Dkt. 153 at 3. Because the elements of equitable tolling under Washington law were not clear, the Court informed the parties of its intent to certify a question to the Washington Supreme Court. *Id.* With the parties' input, it certified the following question to that court:

> Under Washington law, what are the necessary and sufficient conditions— the minimum predicates—a plaintiff in a civil action (other than a personal restraint or habeas corpus petition) must establish to equitably toll the limitations period otherwise applicable to their claim?

Dkt. 157 at 6. This Court stayed the case pending the answer. *Id.*

The Washington Supreme Court's published opinion reaffirmed that a plaintiff seeking to equitably toll a limitations period must establish four elements:

> A plaintiff seeking equitable tolling of the statute of limitations in a civil suit must demonstrate that such extraordinary relief is warranted because (1) the plaintiff has exercised diligence, (2) **the defendant's bad faith, false assurances, or deception interfered with the plaintiff's timely filing**, (3) tolling is consistent with (a) the purpose of the underlying statute and (b) the purpose of the statute of limitations, and (4) justice requires tolling the statute of limitations.

*Fowler v. Guerin*, 200 Wn.2d 110, 125 (2022) (en banc) (emphasis added).

The parties have submitted supplemental briefing on the impact of this holding on the pending motions. Dkts. 164, 166, 167, 169. Both parties address each of the four required elements, but the Court is primarily concerned with the second, bolded above.

If Fowler could establish this element—that the Director engaged in bad faith, or did something deceptive, inappropriate, or otherwise unfair, which interfered with his

1    ability to timely file this action—the Court would have little trouble concluding that he

2    was otherwise diligent, that equitable tolling is consistent with the purposes of the Fifth

3    Amendment and of the limitations period, and that justice requires tolling. But after

4    reviewing the briefing, the record, and the prior opinions, the Court concludes that

5    Fowler cannot establish that the Director's bad faith, false assurances, or deception

6    interfered with his timely filing this lawsuit. Equitable tolling does not apply, and

7    Fowler's § 1983 takings claim in this Court is time-barred as a matter of law.

## III. DISCUSSION.

8

9    **A.    Summary Judgment Standard.**

10           Summary judgment is proper if the pleadings, the discovery and disclosure

11   materials on file, and any affidavits show that there is "no genuine dispute as to any

12   material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

13   P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence

14   in the light most favorable to the nonmoving party and draw all reasonable inferences in

15   that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986);

16   *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact

17   exists where there is sufficient evidence for a reasonable factfinder to find for the

18   nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence

19   presents a sufficient disagreement to require submission to a jury or whether it is so one-

20   sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party

21   bears the initial burden of showing that there is no evidence which supports an element

22   essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

1    Once the movant has met this burden, the nonmoving party then must show that there is a

2    genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to

3    establish the existence of a genuine issue of material fact, "the moving party is entitled to

4    judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

5         The facts are not disputed.

**B.    Fowler's § 1983 claim is subject to a three-year limitations period.**

7         42 U.S.C. § 1983 does not contain a limitations period. Federal (and state) courts

8    instead "borrow" § 1983 limitations periods from analogous state law. They specifically

9    borrow the state's "general or residual statute for personal injury actions." *Owens v.*

10   *Okure*, 488 U.S. 235, 250 (1989). In Washington, that statute is RCW 4.16.080(2), which

11   is a three-year limitations period. *Bagley v. CMC Real Est. Corp.*, 923 F.2d 758, 760 (9th

12   Cir. 1991). Therefore, in this District, the limitations period for a § 1983 claim is three

13   years.

**C.    The limitations period was not tolled, and it expired in 2012.**

15        Fowler alleges and demonstrates that the taking at issue occurred prior to January

16   2002, and, for most class members, in 1996–1997. It is also clear that the Director raised

17   the limitations period affirmative defense in state court when, in 2009, Fowler became

18   the plaintiff for a class of teachers who transferred their retirement accounts from TRS

19   Plan 2 to TRS Plan 3 prior to January 20, 2002. The Superior Court ruled that Fowler's

20   claims were timely, because they did not accrue until he discovered that the DRS had not

21   accounted for daily interest when he transferred. *See Probst I*, 167 Wn. App. at 185. The

22   Director did not appeal that ruling.

1       But even if the state court's determination that Fowler's 2009 state court lawsuit

2    was timely is now unassailable, that does not alter or remedy the fact that he did not

3    commence *this* action until June 2015. The takings claim asserted here (whether it was

4    also asserted in state court, or not) accrued some time before Fowler became the class

5    plaintiff in 2009; he necessarily knew all the facts supporting his claim at that time. This

6    conclusion is only bolstered if the Court accepts Fowler's argument that he sufficiently

7    asserted a federal takings claim there, by articulating it in a brief filed October 23, 2009.

8    *See* Dkt. 108 at 51–52.

9       The Director argues that Fowler's claim is therefore facially time-barred, and that

10   the Washington Supreme Court made clear that to equitably toll the limitations period,

11   Fowler must demonstrate that the Director engaged in bad faith, made false assurances,

12   or deceived Fowler in a way that interfered with his ability to timely commence this

13   lawsuit. Dkt. 164 at 2. She argues that he cannot do so as a matter of law.

14      Fowler's primary argument is that the Director repeatedly, successfully, and

15   falsely assured the state courts that his takings claim was not yet ripe, because her

16   ongoing rulemaking process might result in a rule providing for daily interest on

17   transferred accounts. Dkt. 169 at 7. He asserts that these many assurances "interfered"

18   with his "ability to obtain a ruling *in the timely state proceeding*." *Id.* at 5 (emphasis

19   added); *see also* Dkt. 166 at 5. Relying on Justice Yu's concurring opinion in *Fowler v.*

20   *Guerin*, he argues that, under Washington law, equitable tolling is a flexible, fact-specific

21   inquiry, and emphasizes that the evaluation of the plaintiff's diligence cannot be assessed

22

1   independently of the defendant's actions. Dkt. 166 at 9–10 (citing *Fowler*, 200 Wn.2d at

2   126) (Yu, J., concurring)).

3         Justice Yu's concurring opinion persuasively explained that equitable tolling is not

4   a sanction imposed on the defendant, but it acknowledged that the fact-specific inquiry

5   nevertheless includes "how the defendant's conduct affected the plaintiff's ability to

6   timely file their claim." *Fowler*, 200 Wn.2d at 126.

7         Fowler relies on arguments that the DRS (the state court defendant) made in the

8   Superior Court and the state Court of Appeals, articulating its position that a

9   constitutional challenge to a not-yet finalized interest rule was not ripe. The Director

10  catalogues these statements in her supplemental brief, Dkt. 164 at 4–5.

11        There are at least two major problems with Fowler's assertion that arguments

12  made to the state courts support equitable tolling of the limitations period applicable to

13  his claim here.

14        First, Fowler cites no authority for the proposition that a party's successful

15  arguments in one litigation can amount to the sort of false assurances required for

16  equitable tolling of the limitations period otherwise applicable to a claim the plaintiff

17  later files in a different court. The Ninth Circuit held that the failure to pay daily interest

18  is a *per se* taking, not a regulatory one, and reversed this Court's dismissal on that basis.

19  It also necessarily disagreed with the Washington Court of Appeals on the ripeness issue,

20  but it cannot and did not reverse that court's opinions.

21        There was nothing "false" or deceptive about the arguments the DRS made in the

22  state courts, and Fowler points to no false assurances made to him that led him to delay

ER-013

1    filing. Indeed, his argument is that the DRS's assurances in the state courts prevented him

2    from obtaining relief *in state court*, not that those assurances precluded him from earlier

3    filing this action. *See* Dkts. 166 at 14 and 169 at 10.

4         Second, Fowler also fails to establish that the state court assurances upon which he

5    relies had any causal relationship to the date he filed this action. Even if successful

6    arguments in a different court system could amount to the sort of false assurances

7    required for equitable tolling, the Washington Court of Appeals declined to address

8    Fowler's takings claim in 2012 not because it agreed the claim was unripe, but because

9    Fowler had prevailed on his position that the DRS rule failing to consider daily interest

10   was arbitrary and capricious. It explained: "[b]ecause we decide this case on grounds of

11   arbitrary and capricious agency action, we do not reach the Fowlers' constitutional

12   takings argument." *See Probst I*, 167 Wn. App. at 183 n.1. The earliest "assurance" upon

13   which Fowler relies was made by the DRS to the Superior Court in May 2013, a year

14   after the limitations period expired. *See* Dkt. 104 at 3.

15        The Washington Court of Appeals did not agree that Fowler's takings claim was

16   unripe until *Probst II* in 2014, at least two years after the limitations period on Fowler's

17   current Fifth Amendment claim had expired. The Court of Appeals held that the Superior

18   Court had not abused its discretion in remanding the matter to the Director for further

19   rulemaking under the APA and explained that the takings claim was "speculative" until

20   that rule was final. *Probst II*, 2014 WL 7462567, at *6. Fowler points to no false

21   assurance or deceptive conduct prior to the 2012 expiration of the three-year limitations

22   period on the takings claim he filed here in 2015. Nothing the DRS argued in state court

1 interfered with Fowler's ability to timely file this case. Instead, as his complaint in this

2 court explains, he finally sued here because he was frustrated at the state courts' delay in

3 addressing his takings claim. Dkt. 1 at 2. This assertion is a recognition that he was in

4 fact undeterred by any "false assurances."

5       The Director's arguments to the state courts were not false assurances and, even if

6 they were, they could not, and did not, dissuade or otherwise hinder Fowler from timely

7 asserting here a Fifth Amendment *per se* takings claim based on an event that by

8 definition occurred before January 2002. Fowler has not established that the limitations

9 period should be equitably tolled, and his claim in this Court is not timely.

10                                 ***

11       The Court is aware that this case has been ongoing for eight years, has been to the

12 Ninth Circuit and the Washington Supreme Court, and that the motions decided here have

13 been pending for six months. The dispute itself is now more than 20 years old, and it has

14 spent time in five different courts.[7] The Court recognizes the irony of its determination

15 that the class takings claim is time-barred; such a determination is usually made at the

16 front end of litigation. The State settled with the teachers who transferred funds after

17 January 2020, to preserve its defense that claims based on earlier transfers were untimely.

18 Fowler prevailed on the timeliness of his claims in state court, but his perhaps

19 understandable effort to assert his takings claim here is time-barred.

20 //

21

22      [7] The Court is unaware whether Fowler's state court action remains open.

The Director's motion for summary judgment on her limitations period defense, Dkt. 98, is **GRANTED**, and this matter is **DISMISSED with prejudice**. The motion to vacate the Court's prior rulings (included in Dkt. 164) is **DENIED**. Fowler's motion for summary judgment on the Director's limitations period affirmative defense, Dkt. 103, is **DENIED**.

The Clerk shall enter a JUDGMENT and close the case.

IT IS SO ORDERED.

Dated this 19th day of May, 2023.

BENJAMIN H. SETTLE
United States District Judge

ER-016

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICKEY FOWLER, LESIA MAURER, and a class of similarly situated individuals,

                    Plaintiffs,

        v.

TRACY GUERIN, Director of the Washington State Department of Retirement Systems,

                    Defendant.

CASE NO. C15-5367 BHS

ORDER CERTIFYING QUESTION

This matter is before the Court on the parties' responses, Dkts. 154, 155, to the Court's prior Order, Dkt. 153, which granted in part and reserved ruling in part on Plaintiffs' motion for summary judgment and sought input on the Court's proposed certified question to the Washington Supreme Court. That Order includes the history of this long-running dispute, which will not be repeated here.

\

\

\

ER-017

1        The Court proposed certifying the following question to the Washington Supreme

2  Court:

3             In a civil case, should a court consider factors beyond the intent of
             the substantive statute, the intent of its statute of limitations, and the
4             traditional predicates of bad faith, false assurances, and deception on
             the part of some third party when considering whether justice
5             requires equitable tolling?

6        The parties do not object to certification, but each proposes a variation on the

7  certified question. DRS propose the following questions, which it contends better

8  represents the divergence in Washington caselaw between actions seeking relief from

9  personal restraint or seeking a writ of habeas corpus and other civil actions:

10            Under Washington law, does the plaintiff or petitioner in an action that
            does not involve potential relief from personal restraint or a writ of habeas
11            corpus bear the burden of showing bad faith, deception, or false assurances
            by the defendant, and the exercise of diligence by the plaintiff, to equitably
12            toll the statute of limitations? If not, does the standard for equitable tolling
            articulated in *In re Personal Restraint Petition of Fowler*, 197 Wn.2d 46
13            (2021), apply?

14  Dkt. 154 at 2.

15        Plaintiffs counter that DRS's proposed question does not fairly reflect the cases

16  outside the relief from personal restraint or habeas context that have not applied the

17  traditional predicates. Dkt. 155 at 3. They propose the following certified question:

18            In a civil case, should a court consider factors beyond the intent of the
            substantive statute, the intent of its statute of limitations, and the traditional
19            predicates of bad faith, false assurances, or deception (on the part of the
            defendant or a third party) when considering whether justice requires
20            equitable tolling, such as court error, a plaintiff's diligence and prejudice to
            the defendant?
21

22  *Id*. at 2.

ER-018

1    These conflicting formulations highlight the difficulty in identifying which

2    equitable tolling predicates a court should weigh: which are necessary and which are

3    sufficient? Considering these proposed questions and the caselaw reviewed in its prior

4    Order, the Court makes the following observations.

5    State and federal cases applying Washington law have regularly articulated that

6    equitable tolling cannot apply to relieve a plaintiff from the applicable limitations period

7    unless (1) justice so requires, and (2) tolling the limitations period would be consistent

8    with (a) the intent of the underlying substantive statute and (b) the intent of the

9    limitations period. *See, e.g.*, *Hahn v. Waddington*, 694 F. App'x 494, 495 (9th Cir. 2007)*;*

10   *Millay v. Cam*, 135 Wn.2d 193, 206 (1998) (citations omitted). Prejudice to the defendant

11   appears to be considered within analysis of the intent of the limitations period's

12   protection against stale and unverifiable claims. *See Hahn*, 695 F. App'x at 495;

13   *Vermillion v. Lacey*, No. 3:17-cv-05514-RJB, 2017 WL 5009696, at *3 (W.D. Wash.

14   Nov. 2, 2017). These prerequisites look to be necessary, but not sufficient, conditions for

15   equitable tolling.

16   State civil cases outside the relief from personal restraint or habeas context

17   articulate a third set of conditions. Washington courts have regularly held that a plaintiff

18   must also demonstrate their own diligence in filing *and* that the defendant has engaged in

19   one of the "traditional predicates" for equitable tolling: that bad faith, deception, or false

20   assurances interfered with the plaintiff's timely filing. *See, e.g. Millay*, 135 Wn.2d at 206;

21   *Nash v. Atkins*, No. 81841-4-I, 2020 WL 6708731, at *3–4 (Wash. App. Nov. 16, 2020)

22   (no equitable tolling when traditional predicates were not shown); *Wolfe v. Wash. State*

*Dep't of Trans.*, No. 50894-0-II, 2019 WL 1999020, at *6 (Wash. App. May 7, 2019) (not necessary to assess plaintiff's diligence when plaintiff failed to establish traditional predicates).

In contrast, federal courts appear to have applied the third set of conditions in the disjunctive, concluding that equitable tolling may be appropriate where the plaintiff shows diligence but cannot demonstrate a defendant's bad faith, deception, or false assurances. These cases instead hold that a plaintiff seeking to equitably toll the limitations period must show only that (1) justice so requires, (2) doing so is consistent with the intent of the underlying substantive statute and limitations period, and (3) the plaintiff has been diligent. *Hahn*, 694 F. App'x at 495 (plaintiff was diligent, court error in dismissing instead of transferring case merits equitable tolling despite absence of bad faith, deception, or false assurances); *Aydelotte v. Town of Skykomish*, Case No. C14-307-MJP, Dkt. 74 at 4–5 (W.D. Wash. July 19, 2019) (plaintiff was diligent; delay in service was due to extraordinary circumstances—pervasive harassment and retaliation plaintiff alleged he received regarding the lawsuit); *Vermillion*, 2017 WL 5009696, at *3 (reasoning that *Hahn* read the third set of conditions in the disjunctive and concluding that tolling was warranted because plaintiff was diligent, likely e-filed timely, and missed the statute of limitations by a single day at most); *Putz v. Golden*, 847 F. Supp. 2d 1273, 1284 (W.D. Wash. 2012) (plaintiff's diligence could not be resolved on summary judgment; equity could be invoked because defendants retained both money and property 20 years after plaintiffs bought the property).

1    Recently, the Washington Supreme Court held that, at least in the personal

2    restraint petition context, the limitations period may be equitably tolled when (1) the

3    petitioner was diligent *and* (2) an "extraordinary circumstance" prevented timely filing.

4    *In re Personal Restraint Petition of Fowler*, 197 Wn.2d 46, 54 (2021). Noting that it was

5    adopting the federal habeas standard for equitable tolling, it permitted tolling when

6    extraordinary circumstances prevent timely filing. Such extraordinary circumstances

7    "include, but are not limited to, bad faith, deception, or false assurance by another such

8    as, in some cases, a petitioner's own counsel." *Id.* (citing *Lawrence v. Florida*, 549 U.S.

9    327, 336 (2007)). It clarified that equitable tolling is not limited to malfeasance by the

10   opposing party, explaining that "[s]uch a limitation would undermined the purpose of

11   equitable tolling—to ensure fundamental fairness when extraordinary circumstances have

12   stood in a petitioner's way." *Id.* at 55. At least some of the federal court cases described

13   above are consistent with this framing. *See Hahn*, 694 F. App'x at 495 (court erred in

14   dismissing case); *Aydelotte*, Case No. C14-307-MJP, Dkt. 74 at 4–5 (threats and

15   intimidation).

16   Defendants emphasize that the dissenting opinion in *In re Fowler* argued the civil

17   standard for equitable tolling "does require bad faith, deception, or false assurances to be

18   predicated on the acts of the opposing party" and emphasize that the majority did not

19   dispute this characterization. Dkt. 154 at 3 (quoting *In re Fowler*, 197 Wn.2d at 60

20   (Whitener, J., dissenting)). However, an absence of disagreement is not an endorsement,

21   and this Court continues to conclude that, as the Ninth Circuit observed, "[t]he current

22   predicates for equitable tolling in civil cases under Washington law are not clear."

1   *Eriksen v. Serpas*, 478 F. App's 368, 370 (9th Cir. 2012) (citing *In re Carter*, 172 Wn.2d

2   at 928–29; *In re Bonds,* 165 Wn.2d at 141).

3       Therefore, and against this background, the Court certifies to the Washington

4   Supreme Court the following revised question:

5           Under Washington law, what are the necessary and sufficient conditions—
          the minimum predicates—a plaintiff in a civil action (other than a personal
6           restraint or habeas corpus petition) must establish to equitably toll the
          limitations period otherwise applicable to their claim?

7

8       The Court acknowledges that the decision to answer a certified question is within

9   the Washington Supreme Court's discretion and that the Washington Supreme Court may

10   reformulate the question in its consideration of the case. This Court certifies that the

11   record contains all matters in the pending case deemed material for consideration of the

12   local law question certified for answer under RCW 2.60.010(4)(b).

13       Under Wash. Rules App. Proc. 16.16(d)(1), the Court designates Plaintiffs as the

14   party to file the first brief in the Washington Supreme Court.

15       The Clerk shall forward copies of this Order under official seal to the Washington

16   State Supreme Court, along with certified copies of the Court's prior Orders, Dkts. 85

17   and 153 and the underlying briefing and declarations (with exhibits), Dkts. 98, 103, 107,

18   109, 121, and 124.

19       The Clerk shall STAY this case and strike all current deadlines pending the

20   Washington Supreme Court's Answer. The unresolved portions of the pending motions,

21   Dkts. 98 and 103, and the other pending motions, Dkts. 111 and 144, on which the Court

22   has reserved ruling, are **DENIED without prejudice** and with leave to refile following

ER-022

the Washington Supreme Court's Answer. The parties shall file a Joint Status Report

within 30 days of the Washington Supreme Court's Answer.

**IT IS SO ORDERED.**

Dated this 5th day of August, 2021.

BENJAMIN H. SETTLE
United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICKEY FOWLER, LESIA MAURER,
and a class of similarly situated
individuals,

                          Plaintiffs,

        v.

TRACY GUERIN, Director of the
Washington State Department of
Retirement Systems,

                          Defendant.

CASE NO. C15-5367 BHS

ORDER NOTIFYING PARTIES OF
INTENT TO CERTIFY
QUESTIONS

There are six motions pending before the Court in this long-running dispute: (1)
Plaintiffs Mickey Fowler, Leisa Maurer, and a class of similarly situated individuals'
Motion for Partial Summary Judgment on the Fact of Loss, Dkt. 90, (2) Defendant Tracy
Guerin, Director of the Washington State Department of Retirement Systems' ("DRS")
Motion for Summary Judgment, Dkt. 98, (3) Plaintiffs' Motion for Summary Judgment
on DRS's Affirmative Defenses, Dkt. 103, (4) Plaintiffs' Motion to Exclude Expert
Testimony, Dkt. 110, (5) Plaintiffs' Motion to Approve Formula to Correct Class
Members' Accounts, Dkt. 111, and (6) DRS's Motion to Exclude/Strike All Expert

ER-024

Testimony Not Disclosed, Dkt. 144. The Court has considered the motions, the briefing, and and the remainder of the file and hereby rules as follows.

## I. BACKGROUND

As the parties are familiar with the history of this case, the Court provides the following brief recap:

This case involves a long-running dispute between Plaintiffs, public school teachers who participate in Washington's Teachers' Retirement System ("TRS"), and DRS over DRS's rule allocating interest earned on pension savings. Plaintiffs transferred between TRS Plan 2 and TRS Plan 3 in the late 1990s and contend that they should have been allocated more interest upon transfer, should have gotten a higher "Transfer Payment" based on the additional interest, and have been deprived of earnings on the lost funds ever since.

Plaintiffs first litigated their claims in state court in the mid-2000s, alleging violations of Washington state law and the Washington constitution. Neither their initial nor their amended complaints asserted a Fifth Amendment takings claim under the U.S. Constitution. Plaintiffs had some success in the early 2010s when the Washington State Court of Appeals held that DRS's rule was arbitrary and capricious. However, no relief was forthcoming, as the state courts remanded the rule to DRS for further rulemaking. The state court docket appears to indicate that this case is still proceeding.

Frustrated by the delay, Plaintiffs filed a new suit in this Court in 2015, asserting a 42 U.S.C. § 1983 claim based on the same facts—that the same deprivation of interest violated the U.S. Constitution's Fifth Amendment Takings Clause. After supplemental

ER-025

1    briefing on prudential ripeness, this Court concluded the case was prudentially unripe and

2    granted summary judgment for DRS, dismissing the case without prejudice for lack of

3    jurisdiction. Plaintiffs appealed.

4         In 2018, just before oral argument in the Ninth Circuit, DRS issued a new rule

5    retroactively affirming its practice. After supplemental briefing on the new rule, the Ninth

6    Circuit concluded that Plaintiffs stated a claim for violation of the federal Takings

7    Clause. It remanded for further proceedings. DRS now asserts an affirmative statute of

8    limitations defense and contends that Plaintiffs have not proven their takings claim.

9    Plaintiffs counter that their claim is not time-barred, contend that they have proven a

10   taking, and seek an injunction transferring the lost interest and subsequent earnings.

11                              **II.   DISCUSSION**

12        There are two major issues remaining in this case.

13        The first is whether Plaintiffs have proven a Fifth Amendment takings claim. The

14   Court concludes that they have.

15        The second is whether the statute of limitations bars Plaintiffs' claim. The Court

16   concludes that Plaintiffs' only viable theory to avoid this bar is equitable tolling.

17   Washington law on equitable tolling in civil cases is unclear. The Court thus proposes

18   seeking the assistance of the Washington Supreme Court through a certified question and

19   will consider the parties' perspectives on its proposal.

20        The Court reserves ruling on issues related to an injunction to correct class

21   members' accounts until the limitations period is resolved.

22

**A.     Plaintiffs Have Established a Federal Takings Claim**

The Ninth Circuit was the first court in this lengthy dispute to determine that Plaintiffs stated a claim for a *per se* Fifth Amendment taking. *Fowler v. Guerin*, 899 F.3d 1112, 1117–18 (9th Cir. 2018) ("We now clarify that the core property right recognized in *Schneider* [*v. Calif. Dep't of Corrections*, 151 F.3d 1194 (9th Cir. 1998)] covers interest earned daily, even if payable less frequently."). A *per se* taking "triggers a 'categorical duty to compensate the former owner' under the Takings Clause." *Id.* (quoting *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 233 (2003)).

After remand, Plaintiffs moved for an injunction striking DRS's 2018 rule retroactively affirming its interest calculation practice. This Court denied the motion without prejudice. Dkt. 85. A *per se* taking in effect has two elements: (1) that property was taken and (2) without just compensation. *Id.* at 12 (citing and quoting *Brown*, 538 U.S. at 240). Just compensation is measured by the owner's pecuniary loss. *Brown*, 538 U.S. at 240. If the pecuniary loss is zero, there is no violation of the Just Compensation Clause and no constitutional violation. *Id.* (no pecuniary loss because interest lost was less than reasonable administrative cost of returning it). Because no court had ruled on Plaintiffs' pecuniary loss in the context of a *per se* taking, the Court concluded that an injunction striking the rule was premature without that determination. Dkt. 85 at 19.

In this case, it is undisputed that DRS did not pay daily interest. *See, e.g.*, WAC 415-02-150(5) ("Your individual account does not 'earn' or accrue regular interest on a day by day basis."); WAC 415-02-150(7) ("This rule applies retroactively to November 3, 1977 . . . ."). Neither was DRS responsible for the cost of administering the retirement

1  system. RCW 41.50.110(1), (2) (state employers required to reimburse DRS "its

2  proportional share of the entire expense of the administration of the retirement system").

3  Unlike *Brown*, and despite DRS's statutory interpretation argument to the contrary, the

4  Court concludes that there is no entry on the opposite side of the ledger zeroing out

5  Plaintiffs' pecuniary loss.

6        DRS contends that Plaintiffs experienced no pecuniary loss because they received

7  Transfer Payments encompassing all funds available at the time Plan 3 was created.

8  Specifically, because Plan 3 had a lower defined benefit, it reduced the State's future

9  obligations. The Office of the State Actuary explained in a memorandum that "[w]hen

10  members transfer from TRS 2 with its 2% formula to TRS 3 with its 1% formula,

11  liabilities are essentially cut in half," so "[a]fter funding the TRS 3 liabilities substantial

12  assets remain." Dkt. 101 at 41. "[M]ost of the remaining assets are then used to pay for

13  the members' accumulated employee contributions," and the remaining assets "will go to

14  the TRS 3 member in the form of the transfer bonus." *Id.*; *see also id.* at 37–39 (Fiscal

15  Note from the Office of the State Actuary explaining Joint Committee on Pension

16  Policy's intent that creation of Plan 3 cause no short-term gain to the state and that the

17  Transfer Payment would function as "a balancing item to develop cost neutrality."). DRS

18  argues that had the Legislature known of its obligation to pay daily interest, it would have

19  simply allocated some of the remaining assets to the TRS 3 member in the form of the

20  daily interest owed and the rest of the remaining assets to the TRS 3 member in the form

21  of a Transfer Payment, resulting in the same net transfer.

22

ER-028

1       DRS's argument is based on RCW 41.32.840's legislative history. In Washington,

2   courts "discern plain meaning 'from all that the Legislature has said in the statute and

3   related statutes which disclose legislative intent about the provision in question.'" *Matter*

4   *of K.J.B.*, 187 Wn.2d 592, 597 (2017) (quoting *Dep't of Ecology v. Campbell & Gwinn,*

5   *LLC*, 146 Wn.2d 1, 11 (2002)). "'[I]f, after this inquiry, the statute remains susceptible to

6   more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort

7   to aids to construction, including legislative history.'" *Id.* (quoting *Dep't of Ecology*, 146

8   Wn.2d at 12). The Court may consider legislative history if legislation is ambiguous but

9   should not allow legislative history to override an unambiguous section of the statute or

10  add "an element not found there." *State v. Alvarez*, 74 Wn. App. 250, 258 (1994)

11  (discussing elements section of penal statute). "If a term is defined in a statute, that

12  definition is used." *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813 (1992)

13  (en banc). RCW 41.32.840 provides that those who transfer from Plan 2 to Plan 3 will

14  receive a Transfer Payment in the form of a forty percent increase of their "Plan 2

15  accumulated contributions" and "[a] further additional payment of twenty-five percent,

16  for a total of sixty-five percent." DRS argues that the statutory term "accumulated

17  contributions" is ambiguous and could be understood to encompass all excess funds. Dkt.

18  107 at 30–31. Therefore, DRS argues, it is appropriate to consider the Bill Reports and

19  Fiscal Notes to conclude that the Transfer Payment transferred all available funds to Plan

20  3 members. *Id.* at 30.

21      While DRS's account of the legislature's intent is entirely plausible, the Court

22  concludes that the statute's plain meaning is not ambiguous, so it is not permitted to

ER-029

1    resort to legislative history to construe the statute. *Matter of K.J.B.*, 187 Wn.2d at 597.

2    First, the term "accumulated contributions" is defined. RCW 41.32.010(1)(b) defines it as

3    "the sum of all contributions standing to the credit of a member in the member's

4    individual account . . . together with the regular interest thereon." This definition does not

5    plausibly include all excess funds or include ambiguity on a balancing intent. Second,

6    RCW 41.32.8401(5) characterizes the transfer payment as an "incentive payment,"

7    suggesting legislative intent to incentivize transfers from Plan 2 to Plan 3 but lending no

8    textual support to DRS's contention that transferees were allocated all available funds.

9    The Court concludes that the legislative text is not ambiguous and therefore does not

10   consider legislative history or DRS's expert declarations regarding that legislative

11   history.[1] The available evidence in the record demonstrates that though the Legislature

12   created a legal right to very substantial Transfer Payments as an incentive for members

13   who transferred from Plan 2 to Plan 3, the Legislature did not, and DRS did not, allocate

14   the daily interest earned on Plan 2 accounts. DRS's theory to explain a lack of pecuniary

15   loss is not available as a matter of statutory construction, and there is no other basis in the

16   record to conclude that the Fifth Amendment's Just Compensation Clause was not

17   violated. *C.f. Brown*, 538 U.S. at 240 (no violation of the Just Compensation Clause and

18   thus no constitutional violation when pecuniary loss from *per se* taking is zero).

19          Therefore, the Court concludes that Plaintiffs have established a pecuniary loss

20   and a complete *per se* takings claim, as a matter of law. Plaintiffs' motion for partial

21   ─────────────

22   [1] Plaintiffs' Motion to Exclude Expert Testimony, Dkt. 110, is therefore DENIED as
     moot.

ER-030

1    summary judgment on the fact of loss, Dkt. 90, is thus GRANTED, DRS's motion for

2    summary judgment, Dkt. 98, is DENIED as to the issue of net loss, and Plaintiffs' motion

3    for summary judgment, Dkt. 103, is GRANTED in part as to a *per se* takings claim.

4         In the interests of judicial economy, the Court intends to reserve ruling on

5    Plaintiffs' motion to approve formula to correct class members' accounts, Dkt. 111, and

6    DRS's related motion to exclude/strike all expert testimony not disclosed, Dkt. 144, until

7    resolution of DRS's statute of limitations affirmative defense.

8    **B.    The Court Intends to Certify a Question on Equitable Tolling**

9         Plaintiffs advance a number of theories to defeat DRS's statute of limitations

10   defense. The Court concludes that none but equitable tolling are potentially viable.

11        DRS first asserted a statute of limitations defense in this Court following the Ninth

12   Circuit's recognition of a *per se* takings claim in 2018. Plaintiffs opposed DRS's motion

13   for leave to amend its answer on theories including judicial estoppel, which the Court

14   rejected. Dkt. 85. The Court reasoned that permitting DRS to raise the statute of

15   limitations "based on this new framing of the right at issue does not create an impression

16   that lower courts were misled or adversely affect the judicial process." *Id.* at 14 (citing

17   *Russell v. Rolfs*, 893 F.3d 1033, 1037 (9th Cir. 1990)). And while Plaintiffs argued they

18   suffered prejudice because DRS delayed resolution of their claim for many years by

19   arguing the claim was premature and through a long rulemaking process, the Court

20   concluded that a party does not prejudice the other by advancing a non-frivolous legal

21   position and exploring other available positions when faced with a new legal holding. *Id.*

22

1       DRS contends that Plaintiffs' takings claim accrued no later than July 31, 2006,

2  when Plaintiffs learned of the deprivation of interest. Therefore, it contends the three-year

3  statute of limitations for a Fifth Amendment takings claim under § 1983 ran in 2009, well

4  before Plaintiffs asserted a Fifth Amendment takings claim in this Court in 2015. *Rose v.*

5  *Rinaldi*, 654 F.2d 546, 547 (9th Cir. 1981) (three-year statute of limitations applies to

6  § 1983 claims brought in Washington).

7       Plaintiffs counter that DRS has already litigated the statute of limitations issue in

8  state court (albeit on their state law claims) and lost. They also contend that their claim

9  accrued in 2006 when they learned of the injury, became unripe in 2013 upon state court

10  remand to DRS for rulemaking, and ripened again in 2018 when DRS issued its rule

11  retroactively affirming the injury

12       The threshold issue is the relationship between Plaintiffs' state case and their

13  federal case. Plaintiffs argue on a number of bases that the federal litigation is legally a

14  continuation of the same action. These arguments are not persuasive.

15       Neither DRS's agreement in the parties' Joint Status report, Dkt. 15, to litigate the

16  federal case on the state court record nor the characterizations of Plaintiffs' lawsuits by

17  this Court or the Ninth Circuit as "this litigation" or "this case" make the state court

18  complaint the operative one for statute of limitations purposes.

19       Similarly, the close resemblance of claims does not make the federal court

20  complaint, in effect, relate back to the state court complaint. Plaintiffs argue that DRS

21  improperly characterizes their legal theory as a § 1983 claim when in fact "[t]he claim

22  here, the same as in state court, is that plaintiffs are owed daily interest," and § 1983 is

1    simply a remedy. Dkt. 103 at 19 n.6 (citing *Chapman v. Houston Welfare Rights*, 441

2    U.S. 600, 617–19 (1979)). Plaintiffs are only partially correct. While § 1983 "does not

3    protect anyone against anything," *Chapman*, 441 U.S. at 617, that does not mean

4    Plaintiffs asserted the same claim in each suit—instead, they asserted the same injury,

5    and claimed that injury violated the state constitution in state court and the federal

6    Constitution in federal court.

7          In state court, Plaintiffs' complaint asserted a right to daily interest under the

8    Washington constitution. In this Court, Plaintiffs' complaint asserted a violation of the

9    U.S. Constitution pursuant to 42 U.S.C. § 1983. Washington law on takings claims

10   appears to follow and parallel federal law.[2] However, the claim asserted has important

11   jurisdictional implications—had Plaintiffs raised a federal claim in their state complaint,

12   it would have been subject to removal, and would have potentially reached federal court

13   much earlier. Similarly, had Plaintiffs sought to amend their state court complaint to

14   assert a Fifth Amendment claim based on the same facts, it presumably would have

15   'related back' to the date of the initial state court complaint. CR 15(c). Instead, Plaintiffs

16   reserved their federal claim and asserted it only after becoming frustrated with the pace of

17   the state court proceedings and remand to DRS. Dkt. 90 at 6.

18

19          [2] *See Chong Yim v. City of Seattle*, 194 Wn.2d 651, 683 (2019) (for both *per se* and
     partial regulatory takings, Washington Supreme Court has "always attempted to discern and

20   apply the federal definition of regulatory takings"). While in *Chong Yim* the Washington
     Supreme Court specifically referenced regulatory takings, their framing of a "*per se* regulatory

21   taking," occurring when regulations cause a permanent physical invasion of property, appears to
     parallel the federal framing of a *per se* taking involving the physical occupation of property such

22   as in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982).

1    Plaintiffs are correct that in 2010, the Thurston County Superior Court ruled

2    against DRS on the statute of limitations as to their state law claims filed in that court.

3    Dkt. 107 at 7. It denied DRS's contention that the statute of limitations began to run in

4    the late 1990s at the time of transfer and applied the discovery rule, holding that the

5    statute began to run in 2006 and that Plaintiffs' state law claims were timely.

6    Plaintiffs are not correct that this holding renders their federal claims timely filed

7    or tolls the statute of limitations. The Washington Court of Appeals has held that even in

8    the same jurisdiction, an earlier-filed case does not toll the statute of limitations for a

9    later-filed case. *Dowell Co. v. Gagnon*, 36 Wn. App. 775, 776 (1994); *see also Ramirez*

10   *de Arellano v. Alvarez de Choudens*, 575 F.2d 315, 319–20 (1st Cir. 1978) ("Federal

11   courts have applied to § 1983 suits in particular a rule that prior actions in state courts do

12   not toll the applicable state statute of limitations.") (collecting cases) (cited with approval

13   in *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 240–41 (9th Cir. 1987)).

14   Plaintiffs distinguish *Dowell* on its facts, involving a complaint that was forgotten rather

15   than an action that was vigorously litigated, Dkt. 109 at 21, but that distinction does not

16   advance their claim that a previously-filed state claim tolls the statute of limitations for a

17   later-filed federal claim asserting a different claim for relief based on the same facts.

18   Plaintiffs also advance a theory that absent class members may not have

19   discovered their injury. The Court agrees with DRS that this is immaterial. The named

20   plaintiffs must have a proper basis to proceed in order to represent the class. *See* Dkt. 121

21   at 8. (citing *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir.

22   2003)).

ER-034

1    Finally, Plaintiffs contend that their injury became ripe twice—once upon

2    discovery in 2006, and again in 2018 when DRS issued its new rule retroactively

3    affirming its practice. This position cannot be reconciled with the Ninth Circuit's

4    decision. The Circuit ruled that this Court was incorrect to conclude Plaintiffs' claims

5    were prudentially unripe. *Fowler*, 899 at 1118. If this Court should have identified a *per*

6    *se* taking in 2015, when administrative action was still pending, it cannot be that the

7    claim was unripe at that time.

8    Plaintiffs' argument in opposition to the Director's motion for summary judgment

9    indirectly illustrates this point—they argue that the their takings claim became ripe when

10   the Director issued her 2018 regulation, but "[b]ecause that date was not more than three

11   years before the federal case was filed—indeed, it was *after*—the claim cannot be barred

12   by the statute of limitations." Dkt. 109 at 15 (emphasis added). This argument is

13   consistent with this Court's framing that Plaintiffs' claim was unripe before the new rule

14   issued, a framing the Ninth Circuit rejected. *Compare McMillan v. Goleta Water Dist.*,

15   792 F.2d 1453, 1457 (9th Cir. 1986) (part of rationale for prudential ripeness doctrine is

16   possibility of administrative processes resulting in mutually acceptable solution) *with*

17   *Fowler*, 899 F.3d at 1117 ("a physical *appropriation* of property gave rise to a *per se*

18   taking, without regard to other factors" such as the agency's final decision or state

19   procedures for just compensation) (quoting *Brown*, 538 U.S at 233) (emphasis in

20   original). Further, addressing DRS's case for issue preclusion, the Ninth Circuit held that

21   the Washington Court of Appeals had not addressed the issue before the Circuit—"[The

22   Washington Court of Appeals] found premature only the Teachers' speculation that the

1    forthcoming DRS rulemaking would effect a taking, not their argument here that DRS

2    effected a taking by retaining some of their earned interest years ago." *Fowler*, 899 F.3d

3    at 1119 (citing *Probst v. Dep't of Retirement Sys.*, No. 45128-0-II, 2014 WL 7462567, at

4    *2, *6 (Wn. App. Dec. 30, 2014)).

5        This leaves equitable tolling. Section 1983 contains no statute of limitations.

6    Federal (and state, for that matter) courts instead "borrow "§ 1983 limitations periods

7    from analogous state law. Specifically, they borrow the state's "general or residual statute

8    for personal injury actions." *Owens v Okure*, 488 U.S. 235. 250 (1989). In Washington,

9    that statute is RCW 4.16.080(2), which is a three-year limitations period. *Bagley v CMC*

10   *Realty Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). Therefore, in this District, the

11   limitations period for a §1983 claim is three years. As Plaintiffs' claim accrued in 2006,

12   the limitations period expired in 2009, well before they filed their Fifth Amendment

13   claim in this Court in 2015.

14        "For actions under 42 U.S.C. § 1983, courts apply . . . the forum state's law

15   regarding tolling, including equitable tolling, except to the extent [it] is inconsistent with

16   federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (citing *Fink v. Shedler*,

17   193 F.3d 911, 914 (9th Cir. 1999)). The Washington Supreme Court "allows equitable

18   tolling when justice requires." *Millay v. Cam*, 135 Wn.2d 193, 206 (1998) (en banc)

19   (citing *Finkelstein v. Security Properties, Inc.*, 76 Wn. App. 733, 739–40 (1995)).

20   Traditionally, "[t]he predicates for equitable tolling are bad faith, deception, or false

21   assurances by the defendant, and the exercise of diligence by the plaintiff." *Id.* (citing

22   *Finkelstein*, 76 Wn. App. at 739–40). "In Washington equitable tolling is appropriate

1    when consistent with both the purpose of the statute providing the cause of action and the

2    purpose of the statute of limitations." *Id*. (citing *Douchette v. Bethel Sch. Dist. No. 403*,

3    117 Wn.2d 805, 812 (1991)).

4        At least in the habeas or criminal context, the Washington Supreme Court has

5    expressly recognized that equitable tolling is not confined to the traditional predicates on

6    the part of the defendant. *In re Pers. Restraint of Carter*, 172 Wn.2d 917, 929 (2011).

7    Previously, in *In re Bonds*, a four-justice plurality of the Washington Supreme Court

8    refused to apply equitable tolling when the plaintiff alleged the court's delay in reviewing

9    his petition made a public trial issue undiscoverable until after the limitations period had

10   run, citing the traditional predicates "in the civil context" which had been extended to

11   criminal cases. *In re Bonds*, 165 Wn.2d 135, 144 (2008) (en banc) (citing *Millay*, 125

12   Wn.2d at 206). The three-justice concurrence agreed with the result but wrote separately

13   to disagree with the "conclusion that the remedy of equitable tolling is available in

14   *criminal cases* only when bad faith, deception, or false assurances caused the petitioner's

15   late filing." *Id*. at 144–45 (Alexander, C.J., concurring) (emphasis added). The two-

16   justice dissent emphasized that equitable tolling has been recognized when the plaintiff's

17   ability to meet the statute were impacted by court error. *Id*. at 146–47 (Sanders, J.,

18   dissenting) ("When a court makes a mistake, equity is required to remedy it.") (citing

19   *State v. Littlefair*, 112 Wash. App. 749, 762 (2002); *In re Pers. Restraint of Hoisington*,

20   99 Wn. App. 423, 431 (2000)).

21       In *Carter*, the Washington Supreme Court "recognize[d] that equitable tolling of

22   the time bar may be available in contexts broader than those recognized by the *Bonds*

plurality." 172 Wn.2d at 929. It applied the actual innocence doctrine as an equitable

exception to the time bar in a challenge to a persistent offender sentence. *Id*. It warned

that "any application of equitable tolling, including under the actual innocence doctrine,

must be done only in the narrowest of circumstances and where justice requires." *Id*.

In *Matter of Fowler*, 197 Wn.2d 46 (2021), the Washington Supreme Court

expanded those predicates further. It determined that petitioner's own attorney's

egregious misconduct in a habeas-style case constitutes extraordinary circumstances

justifying equitable tolling. *Id*. at 53–54. The Washington Supreme Court explained that

previously in *In re Pers. Restraint of Haghighi*, 178 Wn.2d 435, 447–48 (2013), it was

"not asked to decide, and therefore did not hold, that equitable tolling was limited to

malfeasance by the opposing party[,]" *Matter of Fowler*, 197 Wn.2d at 55. It explained

that limiting equitable tolling to malfeasance by the opposing party "would undermine

the purpose of equitable tolling—to ensure fundamental fairness when extraordinary

circumstances have stood in a petitioner's way." *Id.* It held that the Washington Court of

Appeals erred when it stated that "'Washington courts require bad faith deception, or

false assurances *caused by the opposing party or the court*' in order to justify equitable

tolling." *Id*. (quoting *Matter of Fowler*, 9 Wn. App.2d 158, 166 (2019)). Therefore, court

error and egregious attorney misconduct are also available predicates at least in the

habeas or criminal context

The Ninth Circuit has commented (in an unpublished decision) that "[t]he current

predicates for equitable tolling in civil cases under Washington law are not clear."

*Eriksen v. Serpas*, 478 F. App'x 368, 370 (9th Cir. 2012) (citing *In re Carter,* 172 Wn.2d

at 928–29; *In re Bonds,* 165 Wn.2d at 141)). In *Hahn v. Waddington,* 694 F. App'x 494, 495 (9th Cir. 2007), another unpublished decision, the Ninth Circuit extended equitable tolling under Washington law in a § 1983 action when the plaintiff timely and appropriately filed in one district court, and the court erroneously dismissed his case when it should have transferred venue. The Circuit reasoned that strict adherence to the statute of limitations given the particular procedural unfairness was not consistent with § 1983, which "exists to promote 'compensation of persons whose civil rights have been violated, and prevention of the abuse of state power.'" *Id.* (citing *Burnett v. Grattan,* 468 U.S. 42, 53 (1984)). Moreover, "the purposes underlying the statute of limitations— finality and protection against stale and unverifiable claims—will not be frustrated by allowing equitable tolling here." *Id.* (citing *Kittinger v. Boeing Co.,* 21 Wn. App. 484 (1978)).

Plaintiffs argue that equitable tolling is similarly appropriate here because their claim is a valid § 1983 claim and their claim is neither stale nor unverifiable. Dkt. 109 at 22. However, applying these strictly purpose-based factors would appear to permit quite widespread application of equitable tolling in civil rights, and potentially other types of cases, particularly for those missing the statute of limitations by some short period, a few months or a year. The court's error in *Hahn* appears integral to confining equitable tolling to "the narrowest of circumstances," *Carter,* 172 Wn.2d at 929.

Recent decisions addressing equitable tolling "where justice requires" in this District do not suggest a clear unifying theme. In *Putz v. Golden,* 847 F. Supp. 2d 1273, 1285 (W.D. Wash. 2012), the Court found disputed facts could support equitable tolling

where, twenty years after the plaintiffs paid for a timeshare, the defendant had effective

possession of the property in question and the purchase price despite acknowledging no

right to do so. In *Aydelotte v. Town of Skykomish, et al.*, Case No. C14-307-MJP, Dkt. 74

(W.D. Wash. July 19, 2019), the Court concluded equitable tolling was warranted when a

defendant the pro se plaintiff sought to join was on notice from the beginning of the

litigation, had previously appeared and been dismissed, the delay came from appeal of

the dismissal, and the initial dismissal for failure to serve was allegedly caused by the

plaintiff's fear of defendants based on their threats and harassment. Conversely, in

*Ceasar Alverto v. Cline*, Case No. C19-5053 RBL-TLF, 2019 WL 4044077, at *5 (W.D.

Wash. Jul. 22, 2019), the Court denied equitable tolling when the plaintiff delayed filing

a civil case based on his criminal defense attorney's warning that police would target his

family if he testified in his own defense. The Court reasoned that "[g]ranting equitable

tolling in instances where a conclusory allegation of a generalized threat is the basis for

delaying the commencement of an action would extend equitable tolling beyond 'the

narrowest of circumstances and where justice requires.'" *Id.* (quoting *Carter*, 172 Wn.

2d. at 929). Recent civil cases from the Washington Courts of Appeals have continued to

rely on the traditional predicates. *See, e.g.*, *Nash v. Atkins*, No. 81841-4-I, 2020 WL

6708731, at *3–4 (Wn. App. Nov. 16, 2020) (no equitable tolling when traditional

predicates were not shown); *Zellmer v. Dep't of Labor & Industries*, No. 53627-7-II,

2020 WL 5537007, at *5 (Wn. App. Sept. 15, 2020) (citing traditional predicates,

distinguishing bad faith from negligence); *Wolfe v. Wash. State Dep't of Trans.*, No.

50894-0-II, 2019 WL 1999020, at *6 (May 7, 2019) (not necessary to assess plaintiff's

ER-040

1   diligence when plaintiff failed to establish traditional predicates); *Price v. Gonzalez*, 4

2   Wn. App. 2d 67, 75–77 (2018) (emphasizing narrowness of court interpretation of

3   traditional predicate of false assurances).

4          The Court thus concludes that equitable tolling in civil cases beyond the traditional

5   predicates is undefined and best addressed by the Washington Supreme Court. Under

6   RCW 2.60.030, federal courts may ask the Washington Supreme Court to rule upon

7   unanswered questions of local law:

8          When in the opinion of any federal court before whom a proceeding is
           pending, it is necessary to ascertain the local law of this state in order to
9          dispose of such proceeding and the local law has not been clearly
           determined, such federal court may certify to the supreme court for answer
10         the question of local law involved and the supreme court shall render its
           opinion in answer thereto.
11

12  Certification preserves important judicial interests of efficiency and comity. The

13  certification process saves "time, energy, and resources and helps build a cooperative

    judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).
14
           The Court therefore proposes certifying the following question to the Washington
15
    Supreme Court:
16
           In a civil case, should a court consider factors beyond the intent of
17         the substantive statute, the intent of its statute of limitations, and the
           traditional predicates of bad faith, false assurances, and deception on
18         the part of some third party when considering whether justice
           requires equitable tolling?
19
           The parties are invited to respond to the Court's proposal, and to consult and
20
    submit revised or alternative questions, either together or separately, within ten days of
21

22

1    this Order. The Court will then decide whether to certify questions to the Washington

2    Supreme Court and stay this case pending the answer.

3         Plaintiffs' Motion for Partial Summary Judgment on the Fact of Loss, Dkt. 90, is

4    thus **GRANTED**, the Director's Motion for Summary Judgment, Dkt. 98, is **DENIED in**

5    **part and the Court RESERVES RULING in part**, Plaintiffs' Motion for Summary

6    Judgment on the Director's Affirmative Defenses, Dkt. 103, is **GRANTED in part** and

7    the Court **RESERVES RULING in part**, Plaintiffs' Motion to Exclude Expert

8    Testimony, Dkt. 110, is **DENIED as moot**, and the Court **RESERVES RULING** on

9    Plaintiffs' Motion to Approve Formula to Correct Class Members' Accounts, Dkt. 111,

10   and the Director's Motion to Exclude/Strike All Expert Testimony Not Disclosed, Dkt.

11   144.

12        **IT IS SO ORDERED.**

13        Dated this 23rd day of July, 2021.

14

15

16        BENJAMIN H. SETTLE
          United States District Judge

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICKEY FOWLER, LESIA MAURER, and a class of similarly situated individuals,

                  Plaintiffs,

    v.

TRACY GUERIN, Director of the Washington State Department of Retirement Systems,

                Defendant.

CASE NO. C15-5367 BHS

ORDER ON PLAINTIFFS' MOTION FOR INJUNCTION, PLAINITFFS' MOTION TO CLARIFY OR MODIFY CLASS DEFINITION, AND DEFENDANT'S MOTION FOR LEAVE TO AMEND

This matter comes before the Court on Plaintiffs Mickey Fowler, Lesia Maurer, and a class of similarly situated individuals' motion for permanent injunction striking the Director's 2018 Rule, Dkt. 68, Plaintiffs' motion to clarify or modify class definition, Dkt. 70, and Defendant Tracy Guerin, Director of the Washington State Department of Retirement Systems' motion for leave to amend answer, Dkt. 78. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby rules as follows.

ER-043

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiffs are public school teachers who participate in Washington's Teachers' Retirement System ("TRS"), a public retirement system managed by the Washington State Department of Retirement Services ("DRS"). Dkt. 18-1 at 20–21. The TRS is comprised of three separate retirement plans: Plan 1, Plan 2, and Plan 3. *Id.* at 21. Plaintiffs are current members of Plan 3 and former members of Plan 2. *See* Dkt. 1, ¶ 18; Dkt. 18-1 at 48. As members of Plan 2, Plaintiffs made contributions to their Plan 2 accounts from each paycheck. Dkt. 1, ¶ 18. DRS tracked the contributions and accumulated interest in individual accounts. Dkt. 18-1 at 2. All contributions were transferred to a state-managed comingled trust fund for investment purposes. Dkt. 18 at 4; Dkt. 18-1 at 8.

Plaintiffs' contributions to Plan 2 accrued interest at a rate specified by DRS— 5.5%, compounded quarterly. Dkt. 18-1 at 16, 18, 21. DRS used the quarter's ending balance to calculate interest. Dkt. 18 at 17, 20, 22. If an account had a zero balance at the end of the quarter, it earned no interest for that quarter. *Id.* at 22. In 1996, Plaintiffs transferred their contributions from Plan 2 to Plan 3. *See* Dkt. 18-1 at 48. Plaintiffs take issue with the method used to calculate the interest on funds transferred between the two plans.

In February 2009, Plaintiffs challenged DRS's method of calculating interest on funds transferred between TRS accounts in state court, continuing litigation initiated in 2005 by another plaintiff who settled with DRS. *See Probst v. Dep't of Ret. Sys.*, 167 Wn. App. 180, 183–84 (2012) ("*Probst I*"). The Superior Court dismissed their claims and

1    Plaintiffs appealed, arguing that (1) common law required DRS to pay daily interest on

2    the funds transferred between Plan 2 and Plan 3; (2) DRS's failure to pay daily interest

3    was arbitrary and capricious; and (3) DRS's failure to pay daily interest constituted an

4    unconstitutional taking. *Id*. at 182.

5         In March 2012, the Washington Court of Appeals reviewed DRS's method of

6    calculating interest under Washington's Administrative Procedure Act ("APA") and

7    reversed and remanded the case. *Id.* at 186, 194. Although the court determined "DRS

8    had authority to decide how to calculate interest," the court held that DRS's method of

9    calculating interest "was arbitrary and capricious because the agency did not render a

10   decision after due consideration." *Id.* at 183. The court also determined "the TRS statutes

11   do not require the DRS to [pay] daily interest on balances transferred from Plan 2 to Plan

12   3." *Id.* at 191. Finally, the court declined to address Plaintiffs' takings claim because the

13   court was able to decide the case under the APA. *Id.* at 183 n.1 (citing *Cmty. Telecable of*

14   *Seattle, Inc. v. City of Seattle, Dep't of Exec. Admin.*, 164 Wn. 2d 35, 41 (2008) (doctrine

15   of constitutional avoidance)).

16        On remand, Plaintiffs argued judgment should be entered in their favor. *Probst v.*

17   *Dep't of Ret. Sys.*, 185 Wn. App. 1015, 2014 WL 7462567, at *2 (2014) ("*Probst II*").

18   The Superior Court disagreed and remanded the case to DRS for further administrative

19   proceedings. *Id.* Plaintiffs appealed. *Id.*

20        In December 2014, the Washington Court of Appeals held the Superior Court

21   correctly interpreted *Probst I* by remanding the case to DRS. *Id.* at *6. The court also

22   determined that Plaintiffs' takings claim was speculative and premature because DRS had

1  not yet adopted a new interest calculation method. *Id.*[1] Plaintiffs' case was remanded to

2  DRS for further rulemaking. *Id.* at *2, *6.

3        On June 15, 2015, Plaintiffs sued the Director in this Court, asserting 42 U.S.C.

4  § 1983 claims for violation of their Fifth Amendment rights. Dkt. 1.[2] They claimed the

5  method DRS used to calculate the interest on funds transferred between two plans within

6  TRS deprived them of their property, in violation of the Takings Clause of the Fifth

7  Amendment. *Id.*

8        On August 13, 2015, the Director moved for summary judgment, seeking

9  dismissal of the complaint as: (1) barred by the Eleventh Amendment; (2) barred by the

10  *Rooker-Feldman* doctrine; (3) barred by issue or claim preclusion; (4) not ripe for review;

11  and (5) meritless as a takings claim because Plaintiffs were not entitled to daily interest.

12  Dkt. 14. On December 22, 2015, the Court granted the motion, concluding that the

13  takings claim was not ripe. Dkt. 28. Plaintiffs appealed to the Ninth Circuit. Dkt. 30. On

14  April 15, 2018, prior to oral argument before the Ninth Circuit, the Director issued WAC

15  415-02-150, reaffirming the prior interest calculation method. On August 16, 2018, the

16  Ninth Circuit reversed and remanded. Dkt. 32.

17        On remand, Plaintiffs moved for class certification, Dkt. 43, and the Court

18  certified a class consisting of: "[a]ll active and retired TRS members who: (1) were

19

20      [1] The Court of Appeals described the claim as pursuant to the Takings Clause of the Fifth
Amendment. *Id*. at *6.

21      [2] In 2016, Tracy Guerin succeeded Marcie Frost as the Director of DRS, becoming the
named defendant. Dkt. 52.

22

1  previously members of TRS Plan 2 and (2) transferred from TRS Plan 2 to TRS Plan 3

2  prior to January 20, 2002," Dkt. 58.[3]

3        The Director sought panel rehearing and rehearing en banc, which the Circuit

4  denied. Dkts. 39, 40; *Fowler v. Guerin*, 899 F.3d 1112 (9th Cir. 2018), *reh'g and reh'g*

5  *en banc denied*, 918 F.3d 644 (2019). The Director then petitioned for certiorari, which

6  the Supreme Court denied. Dkt. 60.

## II. DISCUSSION

### A. Motion to Amend or Clarify Class Definition

9        Plaintiffs inform the Court that the Director has communicated a revised

10  understanding of the class definition which excludes 3,112 of the 26,862 teachers

11  Plaintiffs believe to be in the class. Dkt. 70 at 3.

12        Plaintiffs request that the Court clarify that these teachers are included in the class

13  definition or modify the class definition to state "the class is defined to include all

14  teachers who transferred from TRS Plan 2 to TRS Plan 3 prior to January 20, 2002." Dkt.

15  70 at 16; Dkt. 77 at 3. The Director responds that, in the parties' data exchanges, she has

16  excluded data relative to "inactive" teachers because the class definition includes only

17  "active and retired" teachers and she "could not agree to disclose personal information

18  _____

19     [3] In response to the Court's request for supplemental briefing on the motion for class
certification, the Plaintiffs proposed a class definition encompassing "[a]ll Teachers Retirement

20  System (TRS) members who transferred into TRS Plan 3 from the commencement of TRS Plan
3 (January 1, 1996) to the date of final judgment in this action, except for those members whose
claims were settled in Superior Court in *Probst v. Dept. of Retirement Systems* (January 20, 2002

21  to December 14, 2007)," arguing this definition was necessary "whether the certification is for
proposed injunctive relief or limited to declaratory relief." Dkt. 54 at 7. The Court ruled that

22  amendments to the class definition would need to be made by fully briefed motion. Dkt. 58 at 9.

ER-047

1  regarding teachers outside the class definition." Dkt. 76 at 3. However, the Director does

2  not oppose modifying the class definition or providing the relevant data following the

3  modification. *Id*. The Director proposes using "all persons" rather than "all active and

4  retired TRS members" and using "during the class period (January 1, 1996 to January 20,

5  2002)" rather than "prior to January 20, 2002" to avoid any ambiguity. *Id*. at 1. The

6  Director "does not generally object to the relief requested," but disagrees with premises

7  for the relief set out in Plaintiffs' motion and lists the disagreements. Dkt. 76. In reply,

8  Plaintiffs reiterate their requested language and deny that they mischaracterize the prior

9  proceedings. Dkt. 77 at 3.

10          The Court takes the Director at her word that she does not object to modifying the

11  class definition. The Court understands the parties' dispute about the prior proceedings to

12  be part of their broader dispute about the scope of the Ninth Circuit's mandate rather than

13  critical to deciding Plaintiffs' motion to clarify or modify the class definition.

14          As it appears that the Director's proposed phrase identifying participants is

15  broader than Plaintiffs', the Court understands the parties to be in agreement about the

16  narrower phrase. The Director also suggests using "during the class period (January 1,

17  1996 to January 20, 2002)," but does not explain why this modification is necessary, and

18  Plaintiffs' proposed phrase "prior to January 20, 2002" is consistent with the definition

19  the Court previously approved. Therefore, the Plaintiffs' motion is granted and the class

20  definition is modified to: "[a]ll teachers who transferred from TRS Plan 2 to TRS Plan 3

21  prior to January 20, 2002."

22

1  **B.  Motion for Injunction and Motion to Amend**

2  Plaintiffs move for an injunction striking the Director's new rule governing

3  interest calculation. Dkt. 68. The Director moves for leave to amend her complaint to add

4  a statute of limitations defense. Dkt. 78. Both motions contest the scope of the Ninth

5  Circuit's mandate. The Court will first address the Director's motion to amend before

6  turning to Plaintiffs' motion for injunction.

7  "On remand, a trial court can only consider 'any issue not expressly or impliedly

8  disposed of on appeal.'" *Vizcaino v. U.S. District Court*, 173 F.3d 713, 719 (9th Cir.

9  1999) (quoting *Firth v. United States*, 554 F.2d 990, 993 (9th Cir. 1997)) (additional

10  citation omitted). "District courts 'must implement both the letter and the spirit of the

11  mandate, taking into account the appellate court's opinion and the circumstances it

12  embraces.'" *Id*. (quoting *Delgrosso v. Spang & Co.*, 903 F.2d 234, 240 (3d Cir. 1990))

13  (internal quotation and citation omitted).

14  The Ninth Circuit reversed this Court's summary judgment in the Director's favor

15  on ripeness grounds, holding that Plaintiffs' claim was for a *per se* taking to which the

16  prudential ripeness test for regulatory takings does not apply. *Fowler*, 899 F.3d at 1118. It

17  held that the right to daily interest is a property interest "protected by the Takings Clause

18  regardless of whether a state legislature purports to authorize a state officer to abrogate

19  the common law" and concluded that Plaintiffs state a claim for violation of this right. *Id*.

20  at 1118–19. It considered and rejected the additional grounds for summary judgment the

21  Director raised below, and remanded "for the district court to reconsider class

22

1   certification and, if necessary, to permit further discovery before deciding if the class

2   shall be given the requested injunctive relief." *Id.* at 1120–21.

3       **1.    Motion to Amend**

4       **a.    Standard**

5       Leave to amend a complaint under Fed. R. Civ. P. 15(a) "shall be freely given

6   when justice so requires." *Carvalho v. Equifax Info. Services, LLC*, 629 F.3d 876, 892

7   (9th Cir. 2010) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). This policy is "to be

8   applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048,

9   1051 (9th Cir. 2003) (citations omitted). In determining whether to grant leave under

10  Rule 15, courts consider five factors: "bad faith, undue delay, prejudice to the opposing

11  party, futility of amendment, and whether the plaintiff has previously amended the

12  complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011)

13  (emphasis added). Among these factors, prejudice to the opposing party carries the

14  greatest weight. *Eminence Cap.,* 316 F.3d at 1052.

15      A proposed amendment is futile "if no set of facts can be proved under the

16  amendment to the pleadings that would constitute a valid and sufficient claim or

17  defense." *Gaskill v. Travelers Ins. Co.*, No. 11-cv-05847-RJB, 2012 WL 1605221, at *2

18  (W.D. Wash. May 8, 2012) (citing *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1393

19  (9th Cir. 1997)).

20      **b.    Analysis**

21      The Director seeks leave to amend her answer to raise the statute of limitations as

22  an affirmative defense, arguing that the Court has not set a post-appeal case schedule and

all of the Rule 15(a) factors weigh in favor of amendment. Dkt. 78 at 5. Plaintiffs argue

the motion to amend should be denied because (1) the state court already decided the

statute of limitations defense against the Director; (2) amending the pleadings exceeds the

scope of the Ninth Circuit's mandate; and (3) a statute of limitations defense is barred by

judicial estoppel. Dkt. 80 at 3. While the Director argues Plaintiffs' failure to address the

Rule 15(a) factors is an admission that the rule has merit, Dkt. 82 at 2, the Court

understands Plaintiffs to argue that amendment is futile.

Plaintiffs argue that in the state court proceedings, there was a ruling on the statute

of limitations that represents the law of the case. Dkt. 80 at 5. "[T]he law of the case

doctrine applies when a federal court reviews matters previously considered in state court

involving the same parties." *Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir.

1989). In her reply, the Director argues that the relevant state court decision addressed

Plaintiffs' breach of contract claim, not their takings claim, and even if it did apply to the

takings claim, it did not toll the statute of limitations for Plaintiffs' federal suit. Dkt. 82 at

2–3. The Director also argues that, while RCW 4.16.170 provides that the filing of a

complaint tolls the statute of limitations, tolling does not carry over to subsequently-filed

actions. *See* Dkt. 82 at 2–3 & 3 n.3 (citing, among others, *Dowell Co. v. Gagnon*, 36 Wn.

App. 775 (1984); *Blatt v. Deede*, 135 Fed. App'x 968 (9th Cir. 2005)). Therefore, even

though the Director conceded the state court's ruling in her Answer in this case, it is not

clear that concession referred to the question at issue here. Relatedly, it appears that a

ruling that Plaintiffs' claim was timely in the state court proceedings would not establish

that it was timely in this Court. *Dowell*, 26 Wn. App. at 776 (citing *Fox v. Groff*, 16 Wn.

App. 893, 895 (1984) (the complaint that tolls a statute of limitations is the one filed in the action before the court, not one independently filed)).

Plaintiffs also reference in a footnote that in settling the claims of some plaintiffs in *Probst*, the parties agreed that "for the purposes of asserting a statute of limitations defense against [Plaintiffs], [the Director] shall not count the period beginning on the date the Class Action was filed and ending on the Effective Date of this Settlement Agreement." Dkt. 80 at 6 n.5 (citing Dkt. 18-1 at 35). However, Plaintiffs do not clearly establish how that agreement applies to this subsequently-filed action. The Court concludes that, at a minimum, Plaintiffs do not establish that amendment would be futile based on the law of the case and instead raise arguments which are more appropriate to a fully-briefed motion to dismiss or for summary judgment. An affirmative motion by Plaintiffs would also allow them to address the Director's arguments first raised in reply.

Next, Plaintiffs argue the Ninth Circuit's mandate does not permit consideration of new defenses. Dkt. 80 at 7. They argue that as the remand was issued with specific instructions, amendment to assert new affirmative defenses is outside the scope of remand. *Id.* at 8. Plaintiffs cite authority including *Planned Parenthood v. American Coalition of Life Activists*, 422 F.3d 949, 966–67 (9th Cir. 2005), where the Ninth Circuit "finally adjudicated all issues except for, and remanded only for consideration of" a specific issue, "the constitutional implications of the punitive damages awards." *Id.* Plaintiffs argue that new affirmative defenses are similarly outside the scope of remand in this case, which was to reconsider class certification and "if necessary, to permit further discovery before deciding if the class shall be given the requested injunctive relief." Dkt.

ER-052

80 at 8 (citing *Fowler*, 899 F.3d at 1120–21). However, unlike *Planned Parenthood*, the mandate in this case does not limit the substantive issues the Court should consider in evaluating the funds transfer injunction. Also unlike *Planned Parenthood*, this case has not proceeded through trial to judgment.

The Director counters that as the Ninth Circuit did not fully resolve the merits, consideration of additional defenses is not foreclosed by the mandate. Dkt. 82 at 4 (citing *United States v. Kellington*, 217 F.3d 1084, 1092–93 (9th Cir. 2000)). Specifically, the Director argues that the Ninth Circuit "did not grant summary judgment to Plaintiff[s], did not decide all aspects of the § 1983 claim, did not resolve issues of just compensation, and did not address the statute of limitations defense." *Id.* at 5. Therefore, she argues the mandate does not preclude amendment. *Id.* at 6 (quoting *Nguyen v. United States*, 792 F.2d 1500, 1503 (9th Cir. 1986) ("Absent a mandate explicitly or impliedly precluding amendment, the decision whether to allow leave to amend is within the trial court's discretion.")).

The scope of the mandate is a close question considering that the Circuit resolved the alternate bases for summary judgment "given the many years this case has been held up in the courts." *Fowler*, 899 F.3d at 1118; *see also Local Joint Exec. Bd. of Las Vegas v. N.L.R.B.*, 657 F.3d 865, 867 (9th Cir. 2011) (open remand is inappropriate when after fifteen years of litigation, agency "continues to be unable to form a reasoned analysis in support of its ruling"). The Circuit's comment expresses an interest in prompt resolution of this matter. While the decision clearly concludes Plaintiffs state a *per se* takings claim, the Circuit instructed the Court to decide "if the class shall be given the requested

1  injunctive relief," *Fowler*, 899 F.3d at 1121, rather than instructing the Court to enter the

2  requested injunctive relief or enter it after deciding its scope.

3    As the Circuit explained, "[a] *per se* taking triggers a 'categorical duty to

4  compensate the former owner' under the Takings Clause." *Id.* at 1117 (quoting *Brown v.*

5  *Legal Found. of Wash.*, 538 U.S. 216, 233 (2003)). However, even if property was taken,

6  "the Fifth Amendment only protects against a taking without just compensation." *Brown*,

7  538 U.S. at 240 (quoting *Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835,

8  861–62 (9th Cir. 2001)). Plaintiffs are correct that in *Eastern Enterprises v. Apfel*, 524

9  U.S. 498, 521 (1998), the Supreme Court reasoned that a claim for compensation is

10 "pointless" when the government has directly taken money. However, it is at least

11 possible for the compensation due to the plaintiff for a *per se* taking to be zero resulting

12 in no constitutional violation, as occurred in *Brown*, 538 U.S. at 240. ("Because that

13 compensation is measured by the owner's pecuniary loss—which is zero . . . —there has

14 been no violation of the Just Compensation Clause of the Fifth Amendment in this

15 case.").

16    Though the Ninth Circuit emphasized that the relief Plaintiffs seeks is prospective

17 injunctive relief, *Fowler*, 899 F.3d at 1120 (citing *Taylor v. Westly*, 402 F.3d 924, 935–36

18 (9th Cir. 2005)), Plaintiffs still must establish both elements of the constitutional

19 violation. While the prior proceedings do not suggest the Plaintiffs' pecuniary loss is

20 zero, the Court agrees with the Director that the instructions on remand indicate that the

21 second element of Plaintiffs' claim was not resolved. Recognizing the existence of a right

22 to daily interest is not equivalent to deciding that relief is appropriate in this case and

ER-054

1    should be awarded to Plaintiffs. Therefore, the Court agrees with the Director that the

2    merits are not fully resolved and that the mandate does not impliedly preclude

3    amendment. As addressed in more detail in the following discussion of judicial estoppel,

4    the Court concludes it is permissible for a party to assert a new defense in response to a

5    newly-recognized theory of liability.

6         Finally, Plaintiffs argue amendment is barred by judicial estoppel. The Director

7    counters that Plaintiffs have not established any of the factors pertinent to a judicial

8    estoppel argument. The parties agree that *New Hampshire v. Maine* states the test for

9    judicial estoppel, whether: (1) the party's position is clearly inconsistent with its earlier

10   position, (2) whether there is a risk that judicial acceptance of a position would create the

11   perception that either the earlier or later court was misled, and (3) whether the

12   inconsistent position would create an unfair advantage or impose an unfair detriment on

13   the opposing party. 532 U.S. 742, 750 (2001).

14        Plaintiffs argue that the Director's position in state court and in this Court that

15   their claims were unripe is clearly inconsistent with a statute of limitations defense and

16   that applying the statute of limitations would prejudice them as the Director "has

17   successfully delayed resolution of their claim for many years by having the Washington

18   Superior Court, the Washington Court of Appeals, and this Court accept her position that

19   the teachers' claim was premature." Dkt. 80 at 12–13. As noted, the Ninth Circuit was the

20   first court in this litigation to hold that a *per se* taking was at issue, to which the

21   prudential ripeness test does not apply. *Fowler*, 899 F.3d at 1118.

22

ER-055

1    Permitting the Director to raise a defense based on this new framing of the right at

2    issue does not create an impression that lower courts were misled or adversely affect the

3    judicial process. *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990). Rather, it

4    recognizes that lower courts including this one agreed with the Director that a regulatory

5    taking, subject to the ripeness doctrine, was at issue. *C.f. Yniguez v. State of Ariz.*, 939

6    F.2d 727, 739 (9th Cir. 1991) (judicial estoppel precludes seeking an outcome directly

7    contrary to the result sought and obtained in the lower court). Similarly, while Plaintiffs

8    argue they have suffered prejudice "because the Director has successfully delayed

9    resolution of their claim for many years" by arguing Plaintiffs' claim was premature, a

10   party does not prejudice the other by advancing a non-frivolous legal position and

11   exploring other available positions when faced with a new legal holding. Therefore, the

12   Court concludes that amendment is not barred by judicial estoppel.

13   Considering the extreme liberality favoring amendment, the lack of definitive

14   futility, and the Court's disagreement with Plaintiff's characterization of unfair prejudice,

15   despite the Court's continued sympathy for Plaintiffs over the extensive duration of this

16   litigation, the Director's Motion for Leave to Amend her Answer is granted.

17       **2.      Motion for Injunction**

18   Plaintiffs move for an injunction striking WAC 415-02-150 but retaining the

19   interest rate set by the Director—5.5% annual interest compounded quarterly. Dkts. 68,

20   68-1. The rule, issued in 2018, affirms the interest calculation method under which

21   Plaintiffs' claims arose and applies retroactively to November 3, 1977. WAC 415-02-

22   150(5) ("Your individual account does not 'earn' or accrue regular interest on a day by

1  day basis."); WAC 415-02-150(7). In addition to the teachers' retirement system, it

2  retroactively governs the public employees' retirement system, the law enforcement

3  officers' and firefighters' retirement system, the school employees' retirement system,

4  and the public safety employees' retirement system, and prospectively governs Plan 1

5  and Plan 2 of the Washington state patrol retirement system. WAC 415-02-150(7).

6        Plaintiffs explain that the injunction striking the rule is "in addition to and separate

7  from" an injunction directing a funds transfer to return interest taken. Dkt. 68 at 3 (citing

8  *Fowler*, 899 F.3d at 1120). Plaintiffs note that the parties are working to compile the data

9  needed for the funds transfer injunction and explain that they will file a motion if the

10  parties cannot agree on the formula. *Id*. The request for an injunction directing a funds

11  transfer is described in Plaintiffs' complaint and was part of the record before the Ninth

12  Circuit; the injunction striking the rule is not in the complaint and was not before the

13  Circuit.

14        Plaintiffs argue that the Director's new rule is facially unconstitutional under the

15  Ninth Circuit's decision in *Fowler*. Therefore, Plaintiffs argue that the Court may use its

16  broad equitable power to enjoin unconstitutional laws to enjoin the rule. Dkt. 68 at 6–7

17  (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015); *Whole*

18  *Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2307 (2016)). "It is true enough that we

19  have long held that federal courts may in some circumstances grant injunctive relief

20  against state officers who are violating, or planning to violate, federal law." *Armstrong*,

21  575 U.S. 320, 326–27 (citations omitted). In *Whole Woman's Health*, considering the

22  court of appeals' conclusion that granting facial relief was improper because the plaintiffs

1    only brought an as-applied challenge, the Supreme Court relied on the petitioners'

2    request for "such other and further relief as the Court may deem just, proper, and

3    equitable" to uphold the District Court's facial invalidation of the challenged provision.

4    136 S. Ct. at 2307. The Supreme Court cited Fed. R. Civ. P. 54(c)'s instruction that "a

5    final judgment should grant the relief to which each party is entitled, even if the party has

6    not demanded that relief in its pleadings," as well as its instruction in *Citizens United v.*

7    *Federal Election Commission*, 558 U.S. 310, 333 (2010), that judicial responsibility may

8    require considering facial validity even in the absence of a facial challenge. *Id*

9        Plaintiffs argue that the Director acknowledged in her petitions for rehearing and

10   for rehearing en banc in the Ninth Circuit and for certiorari that the Circuit's mandate

11   requires her to provide daily interest. Dkt. 68 at 12. They argue that any argument to the

12   contrary represents the Director's attempt to relitigate issues either expressly or impliedly

13   disposed of on appeal. *Id*. (citing *Vizcaino*, 173 F.3d at 719). They argue that, as

14   Plaintiffs have a right to daily interest and the rule denies daily interest, the Court should

15   enjoin it and separately address the accounting and remedy for the previous denial of

16   daily interest. Dkt. 68 at 13.

17       The Director opposes the injunction striking the rule on four bases: (1) that

18   Plaintiffs did not challenge WAC 415-02-150 in their complaint, (2) that Plaintiffs lack

19   standing to seek an injunction, (3) that Plaintiffs have failed to establish irreparable injury

20   or inadequate remedies at law, and (4) that Plaintiffs have not yet proven their takings

21   claim under 42 U.S.C. § 1983.

22

ER-058

First, the Court does not find the Director's unpled claims theory persuasive. The new rule did not alter the prior interest calculation practice and was the subject of supplemental briefing before the Ninth Circuit. The Director cannot now reasonably argue she lacked notice that the new rule was part of this case. *C.f. Easton v. Asplundh Tree Experts, Co.*, C16-1694-RSM, 2017 WL 5483769, at *3 (W.D. Wash. Nov. 15, 2017) (requirement to plead a short and plain statement of the claim ensures defendant has notice of claims so it may effectively defend itself).

Second, the Director argues no member of the class has standing to seek prospective injunctive relief regarding the new rule because no member is still in TRS Plan 1 or 2. Dkt. 73 at 7. Prospective injunctive relief requires a showing that the plaintiff suffered or faces a concrete and particularized harm, coupled with "'a sufficient likelihood that he will again be wronged in a similar way.'" *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing and quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). The Director argues that as the class definition is limited to members of Plan 2 who transferred to Plan 3 prior to January 20, 2002, "by definition the named Plaintiff and the class were removed from Plan 2 at least 18 years ago and were never members of TRS Plan 1." Dkt. 73 at 8–9. The Court agrees with Plaintiffs that this argument is unpersuasive as the rule is retroactive to 1977, thus appearing to govern the ongoing denial of daily interest which Plaintiffs challenge.

Third, to establish entitlement to a permanent injunction, a plaintiff must show:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Regarding the second factor, the Ninth Circuit clearly contemplated that prospective injunctive relief in the form of an accounting and funds transfer, a remedy in equity, *could* be appropriate in this case. *Fowler*, 899 F.3d at 1119–20. Regarding the fourth factor, the Director argues that if the rule is enjoined, there would be no rules in place governing regular interest, which would adversely impact individuals who are still members of TRS Plans 1 and 2, including individuals remaining in Plan 2 who are not before the Court. Dkt. 73 at 9. Plaintiffs assert that striking the rule will retain "the Director's regular rate, 5.5% interest compounded quarterly," "adopted without a rule under RCW 41.37.010(38) in 1977" and will obviate "[o]nly the basis for denying the required daily interest." Dkt. 75 at 7. The Court concludes the basis for the injunction is insufficiently established at this time to compel the exercise of its broad equitable power for two reasons.

First, as the "regular" rate adopted without a rule is the rate the Washington Court of Appeals decided was adopted arbitrarily and capriciously, *Probst II*, 185 Wn. App. at *4 (quoting *Probst I*, 167 Wn. App. at 193), it is not clear that rate would be revived with the addition of daily interest simply by striking the new rule.[4] Second, the Court finds it imprudent to decide any potential exercise of broad equitable power before Plaintiffs'

---

[4] The Court would welcome briefing on the severability or survivability of the interest rate in future motion practice on a permanent injunction.

1 entitlement to specific relief is adjudicated. Relevant to both the permanent injunction

2 standard and the Director's argument that Plaintiffs have not proven their claim, the

3 Court disagrees with Plaintiffs' apparent position that the funds transfer injunction is a

4 foregone conclusion. Resolving the specific relief will inform the inquiry into the facial

5 validity of the rule and any appropriate relief. In other words, whether and in what form

6 an injunction for an accounting and funds transfer should issue may inform inquiry into

7 the irreparable nature of the injury, the balance of hardships, and the public interest

8 relevant to a potential injunction striking the rule. Therefore, Plaintiffs' motion for

9 injunction is denied without prejudice.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Plaintiffs' motion for permanent

injunction, Dkt. 68, is **DENIED without prejudice**, Plaintiffs' motion to clarify or

modify class definition, Dkt. 70, is **GRANTED** as stated herein, and the Director's

motion for leave to amend answer, Dkt. 78, is **GRANTED**.

Dated this 22nd day of January, 2021.

_____
BENJAMIN H. SETTLE
United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICKEY FOWLER, LEISA MAURER, and a class of similarly situated individuals,

Plaintiffs,

v.

TRACY GUERIN, Director of the Washington State Department of Retirement Systems,

Defendant.

CASE NO. C15-5367 BHS

ORDER GRANTING PLAINITFF'S MOTION FOR CLASS CERTIFICATION

This matter comes before the Court on putative class representatives Mickey Fowler and Leisa Maurer's ("Plaintiffs") motion for class certification. Dkt. 43. The Court has considered the pleadings filed in support of and in opposition to the motion, the supplemental briefing submitted in response to the Court's request, and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiffs are public school teachers who participate in Washington's Teachers' Retirement System ("TRS"), a public retirement system managed by the Washington

ER-062

1   State Department of Retirement Services ("DRS"). Dkt. 18-1 at 20–21. The TRS is

2   comprised of three separate retirement plans: Plan 1, Plan 2, and Plan 3. *Id.* at 21.

3   Plaintiffs are current members of Plan 3 and former members of Plan 2. *See* Dkt. 1, ¶ 18;

4   Dkt. 18-1 at 48. As members of Plan 2, Plaintiffs made contributions to their Plan 2

5   accounts from each paycheck. Dkt. 1, ¶ 18. DRS tracked the contributions and

6   accumulated interest in individual accounts. Dkt. 18-1 at 2. All contributions were

7   transferred to a state-managed comingled trust fund for investment purposes. Dkt. 18 at

8   4; Dkt. 18-1 at 8.

9       Plaintiffs' contributions to Plan 2 accrued interest at a rate specified by DRS. Dkt.

10  18-1 at 21. DRS set the rate of interest at 5.5%, compounded quarterly. *Id.* at 16, 18, 21.

11  DRS used the quarter's ending balance to calculate interest. Dkt. 18 at 17, 20, 22. If an

12  account had a zero balance at the end of the quarter, it earned no interest for that quarter.

13  *Id.* at 22. Plaintiffs transferred their contributions from Plan 2 to Plan 3. *See id.* at 48.

14      On June 15, 2015, Plaintiffs filed suit against Defendant Marcie Frost ("Frost")

15  under 42 U.S.C. § 1983. Dkt. 1.[1] Plaintiffs' only cause of action was that the method

16  DRS used to calculate the interest on funds transferred between two plans within TRS

17  deprived them of their property in violation of the Takings Clause of the Fifth

18  Amendment. Dkt. 1.

19

20

21

22      [1] The prior litigation of this matter in state court is described in the Court's December 22,
    2015 Order. Dkt. 28 at 2–4.

On September 23, 2015, the parties stipulated to class certification. Dkt. 20. On February 24, 2015, the Court denied the stipulated motion for class certification without prejudice. Dkt. 21.

On December 22, 2015, the Court granted Frost's motion for summary judgment on the grounds that Plaintiffs' claims were not ripe. Dkt. 28. On January 20, 2016, Plaintiffs appealed to the Ninth Circuit. Dkt. 30. In the intervening months, Tracy Guerin ("Guerin") succeeded Marcie Frost as the Director of DRS, becoming the named defendant in this matter. Dkt. 52. On August 16, 2018, the Ninth Circuit reversed and remanded. Dkt. 32. On March 13, 2019, the Ninth Circuit denied Guerin's motion for panel rehearing and petition for rehearing en banc. Dkt. 39. On March 21, 2019, the Ninth Circuit issued its mandate. Dkt. 40; *Fowler v. Guerin*, 899 F.3d 1112 (9th Cir. 2018), *reh'g and reh'g en banc denied*, 918 F.3d 644 (2019).

On April 4, 2019, Guerin moved for a stay pending resolution of her petition for writ of certiorari with the Supreme Court. Dkt. 41. On April 10, 2019, Plaintiffs moved for an order certifying the class. Dkt. 43. On April 29, 3019, Guerin responded to the motion for class certification. Dkt. 49. On May 1, 2019, Plaintiffs replied to their motion. Dkt. 50. On May 2, 2019, the Court denied Guerin's motion to stay. Dkt. 51. On June 11, 2019, Guerin filed a petition for a writ of certiorari with the Supreme Court. Dkt. 53. On June 13, 2019, the Court renoted and requested supplemental briefing on Plaintiffs' motion for class certification (the "June 13th Order"). Dkt. 52. On June 24, 2019, Plaintiffs submitted supplemental briefing. Dkt. 54. On June 28, 2019, Guerin submitted a supplemental response. Dkt. 56.

## II. DISCUSSION

**A. Class Certification**

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "As the party seeking class certification, [Plaintiffs] bear[] the burden of demonstrating that [they] ha[ve] met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001).

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule . . . ." *Id.* Before certifying a class, the Court must conduct a "rigorous analysis" to determine whether Plaintiffs have met the requirements of Rule 23. *Zinser*, 253 F.3d at 1186. "While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23." *Id.*

Under Rule 23(a), Plaintiffs must satisfy four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014). In addition to these four requirements, Plaintiffs must satisfy at least one of the categories of Rule 23(b). *Zinser*, 253 F.3d at 1186.

The parties previously stipulated to class certification, Dkt. 20, which the Court denied without prejudice, Dkt. 21. In their renewed motion, Plaintiffs sought to certify a class of TRS members under Fed. R. Civ. P. 23(a) and (b)(2) and proposed that the Court enter an order with text matching the parties' previous stipulation to class certification.

Dkt. 43 at 3. Plaintiffs proposed the following class definition: "All active and retired TRS members who: (1) were previously members of TRS Plan 2; and (2) transferred from TRS Plan 2 to TRS Plan 3 prior to January 20, 2002" ("the first class definition"). Dkt. 43 at 1. Guerin did not dispute that the class met the Fed. R. Civ. P. 23(a) factors, but argued that the class should not be certified for injunctive relief under Fed. R. Civ. P. 23(b)(2), consistent with Guerin's position advanced in her petition for certiorari that the injunctive relief Plaintiffs seek is "individual retroactive monetary relief for just compensation against the State under the Fifth Amendment in violation of the Eleventh Amendment." Dkt. 49.

In its June 13th Order, the Court noted that it had previously found the parties' stipulation provided insufficient information for the Court to independently scrutinize whether Fed. R. Civ. P. 23's requirements were met. Dkt. 52 at 4 (citing Dkt. 21 at 2). The Court recognized the Ninth Circuit's holding on appeal that Plaintiffs' claims are appropriate for certification under Rule 23(b)(2). *Id.* (citing *Fowler v. Guerin*, 899 F.3d at 1120). The Court requested supplemental briefing in order to be certain of the basis for certification under the Rule 23(a) factors for the first class definition. *Id.*

### 1. Fed. R. Civ. P. 23(a)

Regarding numerosity, Plaintiffs clarify that the estimated class size of over 20,000 is "based on information that the defendant provided many years ago in state proceedings" and Guerin does not dispute. Dkt. 54 at 4 (citing Dkt. 20, ¶ 3). Though this information is again somewhat minimal, the Court is satisfied based on the long history

1    of the litigation in this case and the newly-provided indication of the source of this

2    estimate that the numerosity element is satisfied.

3          Regarding commonality, as long as a single common question of law or fact

4    exists, plaintiffs may satisfy the commonality requirement. *Parsons*, 754 F.3d at 675. The

5    Court finds that Plaintiffs are correct that the legal questions in this case have been

6    litigated extensively and are clearly identified as (1) whether a taking under the Fifth

7    Amendment occurred and (2) what relief is available if a taking did occur. Dkt. 54 at 5. In

8    this case, each putative class member "suffers exactly the same constitutional injury" and

9    eligibility for relief may be determined "in one stroke." *Parsons*, 754 F.3d at 678.

10   Therefore, the Court finds that commonality is satisfied.

11         Regarding typicality, "[w]here the challenged conduct is a policy or practice that

12   affects all class members, the underlying issue presented with respect to typicality is

13   similar to that presented with respect to commonality . . . ." *Parsons*, 754 F.3d at 685

14   (quoting *Armstrong v. Davis*, 275 F.3d 849, 868–69 (9th Cir. 2001)). Here, the

15   challenged conduct is the policy of non-crediting earned interest and allocating this

16   interest to others. Dkt. 54 at 6. This policy impacted the named plaintiffs in the same

17   manner as the absent class members. *Id*. This policy also caused them the same injury, a

18   loss of interest earned on their retirement accounts. *Id*. Therefore, the Court finds that

19   typicality is satisfied.

20         Regarding adequacy, this element "serves to uncover conflicts of interest between

21   named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*,

22   521 U.S. 591, 625 (1997). Plaintiffs were appointed class representatives in the parallel

ER-067

state court action in 2009 and have represented the class since that time. Dkt. 54 at 6 (citing *Fowler*, 899 F.3d at 1115–16; Dkt. 20, ¶ 6). Regarding class counsel, "[a] trial court [should consider] the competence of counsel when deciding to grant or deny class certification." *Wrighten v. Metro. Hosp., Inc.*, 726 F.3d 1346, 1352 (9th Cir. 1984) (citing *Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975)). Plaintiffs' counsel David F. Stobaugh declares that he and his firm, Benedich Stobaugh & Strong, "have successfully represented individuals in class action cases for many years," including in numerous actions dealing with employee benefits. Dkt. 44. Plaintiffs' counsel has been litigating this case for many years and the Court finds no reason to doubt their competency. Therefore, the Court concludes that Plaintiffs and class counsel satisfy the requirement to adequately represent the class.

### 2. Guerin's Objection to Certification

The Court finds that Guerin's objections to class certification for injunctive relief under the first class definition are properly addressed in Guerin's petition for certiorari and do not constitute issues properly before this Court at this point in the proceedings. Guerin "does not oppose class certification to the extent plaintiffs are seeking relief in the form of a declaration that defendant violated the takings clause of the Fifth Amendment. Dkt. 49 at 3.

On appeal, the Ninth Circuit explicitly considered and rejected Guerin's argument that Plaintiffs' takings claim is barred by the Eleventh Amendment. *Fowler*, 899 F.3d at 1119–20. ("In the Director's view, the Teachers seek monetary damages, which would mean that the State is the real party in interest and that a money award would

ER-068

1    impermissibly be paid from the State's treasury.") The Circuit found that "the Teachers

2    actually seek an injunction ordering the Director to return the savings taken from them,"

3    reasoned that the prospective injunctive relief sought is "readily distinguishable from a

4    compensatory damages award," and explained that "[t]he Eleventh Amendment does not

5    stand in the way of a citizen suing a state official in federal court to return money

6    skimmed from a state-managed account." *Id*. The Circuit held that "[t]he claim can be

7    certified for class treatment under Rule 23(b)(2) because the relief of correcting the entire

8    records system for the class member accounts is in the nature of injunctive relief." *Id*.

9        Guerin also argues that Ninth Circuit alluded to *Ex Parte Young*, 209 U.S. 123

10   (1908) in characterizing the relief Plaintiffs seek as prospective but argues that in fact, the

11   *Ex Parte Young* exception is inapplicable to the facts at bar. Dkt. 49 at 5–6. Guerin's

12   argument that the Circuit majority made a mistaken allusion to *Ex Parte Young* is again

13   an issue for certiorari and not an issue before this Court. *See also Fowler*, 918 F.3d at 647

14   (Bennett, J., dissenting).

15       In sum, as the Ninth Circuit has found the class as defined in the first class

16   definition may be certified pursuant to Fed. R. Civ. P. 23(b)(2), and the Court is satisfied

17   that the class also meets the requirements of Fed. R. Civ. P. 23(a), the class may be

18   certified as described in the first class definition for both declaratory and injunctive relief.

19       However, in supplemental briefing, Plaintiffs informed the Court that they "do not

20   object to provisionally limiting the class certification here to declaratory relief while the

21   Supreme Court review is pending," but explain that "it is necessary to change the class

22   definition" because Guerin's challenged practice on interest accrual has continued

ER-069

1 through the present day. Dkt. 54 at 7 (citing WAC § 415-02-150; *Fowler*, 899 F.3d at

2 1116–19). Plaintiffs now propose a class definition which reads:

> All Teachers Retirement System (TRS) members who transferred into TRS
> Plan 3 from the commencement of TRS Plan 3 (January 1, 1996) **to the**
> **date of final judgment in this action**, except for those members whose
> claims were settled in Superior Court in *Probst v. Dept. of Retirement*
> *Systems* (January 20, 2002 to December 14, 2007)

6 ("the second class definition"). Dkt. 54 at 7 (emphasis added). Plaintiffs argue this second

7 class definition is necessary "to correspond to [the facts of the DRS rulemaking] and the

8 Ninth Circuit's decision . . . whether the certification is for proposed injunctive relief or

9 limited to declaratory relief." *Id.* (citing WAC § 415-02-150; *Fowler*, 899 F.3d at 1116–

10 19).

11      Guerin moves to strike the second class definition as non-responsive to the Court's

12 request for supplemental briefing. Dkt. 56 at 2. Guerin also argues that the second class

13 definition lacks commonality, typicality, and adequacy. *Id.* at 5.

14      The Court grants the motion to strike because proposing a new class definition

15 goes beyond the scope of the request for supplemental briefing. If Plaintiffs seek to alter

16 or amend the certified class, they may do so by motion. *See* Fed. R. Civ. P. 23(c)(1)(C)

17 ("An order that grants or denies class certification may be altered or amended before final

18 judgment."); *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018) ("The

19 district court's class certification order, while important, is also preliminary"). Filing the

20 appropriate motion affords Plaintiffs the opportunity to fully brief the issue and affords

21 Guerin the due process protections of adequate notice as opposed to forcing her to

22 respond to a new class definition in four days' time.

ORDER - 9

1

### III.  ORDER

2

Therefore, it is hereby **ORDERED** that Plaintiffs' motion for class certification,

3

Dkt. 43, is **GRANTED**, and the Court certifies the following class:

4

All active and retired TRS members who: (1) were previously
members of TRS Plan 2 and (2) transferred from TRS Plan 2 to TRS Plan 3

5

prior to January 20, 2002.

6

Dated this 25th day of July, 2019.

7

8

_____
BENJAMIN H. SETTLE

9

United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICKEY FOWLER, et al.,

              Plaintiffs,

    v.

MARCIE FROST, Director of the
Washington State Department of
Retirement Systems,

              Defendant.

CASE NO. C15-5367 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
DISMISSING PLAINTIFFS'
COMPLAINT WITHOUT
PREJUDICE

This matter comes before the Court on Defendant Marcie Frost's ("Frost") motion for summary judgment (Dkt. 14). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion in part and denies it in part for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL BACKGROUND

**A.    Retirement Plans**

Plaintiffs Mickey Fowler and Leisa Maurer ("Plaintiffs") are public school teachers in the Snoqualmie Valley School District. Dkt. 1 ("Comp.") ¶¶ 10–11; *see also* Dkt. 18, Declaration of Stephen Festor ("Festor Dec."), App. at 97. In Washington, public school teachers participate in the Teachers' Retirement System ("TRS"), a public retirement system managed by the Washington State Department of Retirement Services

1  ("DRS").  Festor Dec., App. at 69–70.  The TRS is comprised of three separate retirement

2  plans: Plan 1, Plan 2, and Plan 3.  *Id.* at 70.

3       Plaintiffs are current members of Plan 3, and former members of Plan 2.  *See*

4  Comp. ¶ 18; Festor Dec., App. at 97.  As members of Plan 2, Plaintiffs made

5  contributions to their Plan 2 accounts from each paycheck.  Comp. ¶ 18.  DRS tracked the

6  contributions and accumulated interest in individual accounts.  Festor Dec., App. at 51.

7  All contributions were transferred to a state-managed comingled trust fund for investment

8  purposes.  *Id.* at 1, 57.

9       Plaintiffs' contributions to Plan 2 accrued interest at a rate specified by DRS.  *Id.*

10 at 70.  DRS set the rate of interest at 5.5%, compounded quarterly.  *Id.* at 65, 67, 70.

11 DRS used the quarter's ending balance to calculate interest.  *Id.* at 14, 17, 19.  If an

12 account had a zero balance at the end of the quarter, it earned no interest for that quarter.

13 *Id.* at 19.

14      In 1996, Plaintiffs transferred their contributions from Plan 2 to Plan 3.  *See id.* at

15 97.  Plaintiffs disagree with the method DRS used to calculate the interest on funds

16 transferred between the two TRS accounts.

17 **B.    State Court Suit**

18      In February 2009, Plaintiffs challenged DRS' method of calculating interest on

19 funds transferred between TRS accounts in state court.[1]  *See Probst v. Dep't of Ret. Sys.*

20 _____

21      [1] The suit was initially brought by Jeffrey Probst, a member of the Public Employees
   Retirement System, in January 2005.  *Probst I*, 167 Wn. App. at 183–84.  Plaintiffs continued
22 litigating the suit after Probst reached a settlement with DRS.  *Id.* at 184.

ORDER - 2

1   (*Probst I*), 167 Wn. App. 180, 184 (2012).  The superior court dismissed their claims, and

2   Plaintiffs appealed.  *Id.* at 185.  On appeal, Plaintiffs argued: (1) common law required

3   DRS to pay daily interest on the funds transferred between Plan 2 and Plan 3; (2) DRS'

4   failure to pay daily interest was arbitrary and capricious; and (3) DRS' failure to pay

5   daily interest constituted an unconstitutional taking.  *Id.* at 182.

6        In March 2012, the Washington Court of Appeals reviewed DRS' method of

7   calculating interest under Washington's Administrative Procedure Act ("APA"), and

8   reversed and remanded the case.  *Id.* at 186, 194.  Although the court determined "DRS

9   had authority to decide how to calculate interest," the court held that DRS' method of

10  calculating interest "was arbitrary and capricious because the agency did not render a

11  decision after due consideration."  *Id.* at 183.  The court also determined "the TRS

12  statutes do not require the DRS to [pay] daily interest on balances transferred from Plan 2

13  to Plan 3."  *Id.* at 191.  Finally, the court declined to address Plaintiffs' takings claim

14  because the court was able to decide the case under the APA.  *Id.* at 183 n.1.

15       On remand, Plaintiffs argued judgment should be entered in their favor.  *Probst v.*

16  *Dep't of Ret. Sys.* (*Probst II*), 185 Wn. App. 1015, 2014 WL 7462567, at *2 (2014).  The

17  superior court disagreed, and remanded the case to DRS for further administrative

18  proceedings.  *Id.*  Plaintiffs appealed.  *Id.*

19       In December 2014, the Washington Court of Appeals held the superior court

20  correctly interpreted *Probst I* by remanding the case to DRS.  *Id.* at *6.  The court also

21  determined that Plaintiffs' takings claim was speculative and premature because DRS had

22

ORDER - 3

1   not yet adopted a new interest calculation method. *Id.* Plaintiffs' case was remanded to

2   DRS for further rulemaking. *Id.* at \*2, \*6. DRS has not issued a new rule. Comp. ¶ 68.

3   **C.      Present Suit**

4        On June 1, 2015, Plaintiffs filed the instant suit in this Court under 42 U.S.C.

5   § 1983. *Id.* ¶ 1. Plaintiffs' sole claim is an alleged violation of the Takings Clause of the

6   Fifth Amendment, as applied to the states by the Fourteenth Amendment. *Id.* ¶ 75.

7        On August 13, 2015, Frost moved for summary judgment. Dkt. 14. On August

8   31, 2015, Plaintiffs responded. Dkt. 17. On September 4, 2015, Frost replied. Dkt. 19.

9   On October 15, 2015, the Court requested additional briefing on ripeness. Dkt. 22. On

10   October 30, 2015, the parties filed their opening briefs. Dkts. 23, 24. On November 6,

11   2015, the parties filed their responsive briefs. Dkts. 26, 27.

12                              **II. DISCUSSION**

13        Frost moves for summary judgment, seeking dismissal of Plaintiffs' takings claim

14   on several grounds. Dkt. 14.

15   **A.      Summary Judgment Standard**

16        Summary judgment is proper only if the pleadings, the discovery and disclosure

17   materials on file, and any affidavits show that there is no genuine issue as to any material

18   fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

19   The moving party is entitled to judgment as a matter of law when the nonmoving party

20   fails to make a sufficient showing on an essential element of a claim in the case on which

21   the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

22   323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole,

ORDER - 4

1  could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

2  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

3  present specific, significant probative evidence, not simply "some metaphysical doubt").

4  *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists

5  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

6  jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

7  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

8  626, 630 (9th Cir. 1987).

9         The determination of the existence of a material fact is often a close question. The

10  Court must consider the substantive evidentiary burden that the nonmoving party must

11  meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

12  U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

13  issues of controversy in favor of the nonmoving party only when the facts specifically

14  attested by that party contradict facts specifically attested by the moving party. The

15  nonmoving party may not merely state that it will discredit the moving party's evidence

16  at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

17  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

18  nonspecific statements in affidavits are not sufficient, and missing facts will not be

19  presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

20

21

22

ORDER - 5

1    **C.    Ripeness**

2         Frost challenges the ripeness of Plaintiffs' takings claim, arguing DRS has not yet

3    adopted a new interest calculation policy and thus Plaintiffs' claim is not ripe for review.

4    Dkts. 14, 23.

5         "Ripeness is a justiciability doctrine designed 'to prevent the courts, through

6    avoidance of premature adjudication, from entangling themselves in abstract

7    disagreements over administrative policies, and also to protect the agencies from judicial

8    interference until an administrative decision has been formalized and its effects felt in a

9    concrete way by the challenging parties.'"  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*,

10   538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49

11   (1967)).  "If a claim is unripe, federal courts lack subject matter jurisdiction and the

12   complaint must be dismissed."  *West Linn Corp. Park L.L.C. v. City of West Linn*, 534

13   F.3d 1091, 1099 (9th Cir. 2008).

14        For a federal takings claim to be ripe, "the party bringing the challenge must

15   overcome two prudential hurdles."  *Adam Bros. Farming, Inc. v. County of Santa*

16   *Barbara*, 604 F.3d 1142, 1146 (9th Cir. 2010).  The Supreme Court articulated these two

17   requirements in *Williamson County Regional Planning Commission v. Hamilton Bank of*

18   *Johnson City*, 473 U.S. 172 (1985).  First, the plaintiff must demonstrate "the government

19   entity charged with implementing the regulations has reached a final decision regarding

20   the application of the regulations to the property at issue."  *Id.* at 186.  Second, the

21   plaintiff must "seek compensation through the procedures the State has provided for

22   doing so."  *Id.* at 194.

ORDER - 6

1    Plaintiffs argue they do not need to exhaust state remedies in this case. Dkt. 24.

2  The primary problem, however, is the ongoing administrative proceeding.  Under

3  Washington law, DRS has discretion to determine how interest should be calculated on

4  funds transferred between TRS accounts. *See* RCW 41.50.033(1) ("The director shall

5  determine when interest, if provided by a plan, shall be credited to accounts in . . . the

6  teachers' retirement system . . . . The amounts to be credited and the methods of doing so

7  shall be at the director's discretion . . . ."); *see also Probst I*, 167 Wn. App. at 188–89.  In

8  *Probst I*, the Washington Court of Appeals held that DRS' calculation method was

9  arbitrary and capricious.  167 Wn. App. at 183.  In *Probst II*, the court remanded

10  Plaintiffs' suit to DRS for further rulemaking.  2014 WL 7462567, at *2, *6.  DRS has

11  not yet reached a final decision as to how interest will be calculated on funds transferred

12  between TRS accounts, and the agency's definitive position on the matter is unknown at

13  this time.  The outcome of DRS' rulemaking process could very well impact Plaintiffs'

14  federal takings claim, but the nature and extent of any such impact is unclear.  In the

15  absence of a final decision from DRS, a decision from this Court would be an advisory

16  opinion. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("The federal courts

17  established pursuant to Article III of the Constitution do not render advisory opinions.").

18    The Court is sympathetic to the fact that Plaintiffs have been litigating this issue

19  for many years.  Despite the length of this litigation, Plaintiffs' federal takings claim is

20  not yet ripe for review.  The Court therefore grants Frost's motion as to ripeness, and

21  dismisses this case without prejudice.

22

ORDER - 7

1        **III. ORDER**

2        Therefore, it is hereby **ORDERED** that Frost's motion for summary judgment

3   (Dkt. 14) is **GRANTED** with respect to ripeness and **DENIED as moot** with respect to

4   the remaining arguments.  Plaintiffs' complaint is **DISMISSED without prejudice** for

5   lack of jurisdiction.

6        Dated this 22nd day of December, 2015.

7

8                                        _____
                                         BENJAMIN H. SETTLE
9                                        United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

1

2

3

4

5                        UNITED STATES DISTRICT COURT
6                        WESTERN DISTRICT OF WASHINGTON
                                    AT TACOMA
7

8    MICKEY FOWLER, et al.,

9                    Plaintiffs,           CASE NO. C15-5367 BHS

10            v.                           ORDER REQUESTING
                                           ADDITIONAL BRIEFING AND
11   MARCIE FROST,                         RENOTING MOTION

12                   Defendant.

13

14        This matter comes before the Court on Defendant Marcie Frost's ("Frost") motion

15   for summary judgment (Dkt. 14).  The Court has considered the pleadings filed in support

16   of and in opposition to the motion and the remainder of the file and hereby requests

17   additional briefing and renotes the motion as discussed herein.

18              **I. PROCEDURAL AND FACTUAL BACKGROUND**

19        On June 1, 2015, Plaintiffs Mickey Fowler and Leisa Maurer ("Plaintiffs") filed a

20   class action suit under 42 U.S.C. § 1983.  Dkt. 1 ("Comp.").  Plaintiffs' sole cause of

21   action is an alleged violation of the Takings Clause of the Fifth Amendment, as applied to

22   the states by the Fourteenth Amendment. *Id.* ¶ 75.

ORDER - 1

1     Plaintiffs' takings claim stems from a dispute over how the Washington State

2  Department of Revenue Service ("DRS") calculates interest on Teachers Retirement

3  System ("TRS") accounts. *See id.* ¶¶ 2–8, 75.  Plaintiffs allege that Frost's failure to pay

4  daily interest on their TRS contributions constitutes an unconstitutional taking. *Id.* ¶ 75.

5  Frost is the Director of DRS. *Id.* ¶ 12.

6     Prior to this suit, Plaintiffs brought their takings claim against DRS in Washington

7  State court. *See id.* ¶¶ 52–73; *Probst v. Dep't of Ret. Sys.*, 167 Wn. App. 180 (2012).

8  Washington courts have not ruled on Plaintiffs' takings claim. *See Probst*, 167 Wn. App.

9  at 183 n.1 (declining to address Plaintiffs' takings claim because the court decided the

10  case under the Administrative Procedure Act); *Probst v. Dep't of Ret. Sys.*, 185 Wn. App.

11  1015, 2014 WL 7462567, at *6 (2014) (declining to review Plaintiffs' takings claim

12  because it was "premature" and "not ripe for review").  Plaintiffs' state court case was

13  remanded to DRS for further rulemaking as to how interest on TRS contributions should

14  be calculated. *Probst*, 2014 WL 7462567, at *2, *6.  DRS has not issued a new rule.

15  Comp. ¶ 68.

16     On August 13, 2015, Frost moved for summary judgment. Dkt. 14.  On August

17  31, 2015, Plaintiffs responded. Dkt. 17.  On September 4, 2015, Frost replied. Dkt. 19.

18                                    **II. DISCUSSION**

19     For a federal takings claim to be ripe, the party bringing the claim must overcome

20  "two independent prudential hurdles." *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S.

21  725, 733–34 (1997); *Adam Bros. Farming, Inc. v. Cty. of Santa Barbara*, 604 F.3d 1142,

22  1146 (9th Cir. 2010).  The Supreme Court articulated these two requirements in

ORDER - 2

1  *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*,

2  473 U.S. 172 (1985).  First, the plaintiff must demonstrate that "the government entity

3  charged with implementing the regulations has reached a final decision regarding the

4  application of the regulations to the property at issue." *Id.* at 186.  Second, the plaintiff

5  must demonstrate that he or she "unsuccessfully attempted to obtain just compensation

6  through the procedures provided by the State for obtaining such compensation." *Id.* at

7  195.

8      Although the parties discuss ripeness in their briefing, the parties do not

9  specifically address the requirements set forth in *Williamson County*.  The Court

10  therefore requests additional briefing on whether Plaintiffs' takings claim is ripe under

11  *Williamson County* and its progeny.  The parties should simultaneously file opening

12  briefs addressing these issues by October 30, 2015.  The parties should file responsive

13  briefs by November 6, 2015.

14                                    **III. ORDER**

15      Therefore, the Court requests additional briefing on the issues discussed herein.

16  Frost's motion for summary judgment (Dkt. 14) is renoted to November 6, 2015.

17      Dated this 15th day of October, 2015.

18

19                                    

20                                    BENJAMIN H. SETTLE
                                      United States District Judge

21

22