No. 23-35414

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

MICKEY FOWLER, LEISA MAURER, and
a class of similarly situated individuals,

*Plaintiffs-Appellants*,

v.

TRACY GUERIN, Director of the Washington
State Department of Retirement Systems,

*Defendant-Appellee*.

---

*On Appeal from the United States District Court for the Western District of
Washington, No. 3:15-cv-05367-BHS, The Honorable Benjamin H. Settle*

---

BRIEF OF APPELLEE

---

K&L GATES LLP
Robert B. Mitchell, WSBA No. 10874
Christopher M. Wyant, WSBA No. 35561
Todd L. Nunn, WSBA No. 23267
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Tel: 206-623-7580
Fax: 206-623-7022
rob.mitchell@klgates.com
chris.wyant@klgates.com
todd.nunn@klgates.com

*Attorneys for Appellee*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...........................................................................1

II.  STATEMENT OF JURISDICTION .........................................2

III. ISSUES PRESENTED FOR REVIEW ......................................2

IV.  STATEMENT OF THE CASE ...................................................3

   A.   DRS sets interest policy as part of administering state
        retirement plans. .............................................................3

   B.   State-court litigation addressed claims brought under the
        Washington Administrative Procedure Act. .......................5

   C.   The state-court litigation did not address any takings claim...............7

   D.   The state-court litigation resolved the Fowlers' claim for relief
        under the Washington Administrative Procedure Act. ......................8

   E.   Plaintiffs shopped for a new forum and sued in federal court. ...........9

   F.   The district court dismissed plaintiffs' takings claim as unripe. .......10

   G.   This Court reversed the district court, holding that plaintiffs had
        stated a claim for a *per se* taking.......................................11

   H.   The district court resolved the case on remand when it
        dismissed plaintiffs' takings claim as barred by the statute of
        limitations. ...................................................................14

        1.   The district court dismissed the case as time-barred. .............15

        2.   The district court denied the Director's motion insofar as
             it sought summary judgment based on the absence of
             loss...................................................................................17

V.   SUMMARY OF ARGUMENT ...................................................19

VI.  ARGUMENT...............................................................................20

   A.   In granting leave to amend, the district court complied with this
        Court's mandate and did not abuse its discretion. .............................20

        1.   Standard of review .................................................................20

        2.   The district court satisfied the rule of mandate. ......................21

# TABLE OF CONTENTS
## (continued)

Page

3. The district court did not abuse its discretion in granting the Director leave to amend. ...................................................27

    a. The state court's statute-of-limitations ruling cannot help plaintiffs. ...................................................28

    b. The mandate does not address the statute of limitations. ...................................................30

    c. Judicial estoppel does not bar the Director from raising the statute of limitations as an affirmative defense. ...................................................33

B. As the district court held, the statute of limitations expired years before plaintiffs filed their federal lawsuit. ...................................................36

1. Standard of review ...................................................37

2. A *per se* takings claim is ripe when the alleged taking occurs. ...................................................37

3. This Court's ripeness holding in *Fowler I* is the law of the case. ...................................................38

4. Judicial estoppel bars plaintiffs from contradicting the arguments they advanced successfully in *Fowler I*. ...................................................39

5. Plaintiffs' argument is both illogical and contrary to governing law ...................................................41

C. Absence of harm due to DRS's alleged taking provides an alternative basis to affirm. ...................................................44

1. Standard of review ...................................................44

2. To prove a compensable taking requires proof of a net loss ...................................................45

3. Plaintiffs suffered no net loss ...................................................46

4. The Director demonstrated that plaintiffs could not meet their burden to prove a net loss. ...................................................47

5. The district court erred when it refused to consider the Director's evidence. ...................................................50

## TABLE OF CONTENTS
(continued)

**Page**

VII.    CONCLUSION.................................................................................52

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bagdadi v. Nazar,*
  84 F.3d 1194 (9th Cir. 1996) ...................................................44

*Blatt v. Deede,*
  135 F. App'x 968 (9th Cir. 2005) ............................................29

*Block v. City of Los Angeles,*
  253 F.3d 410 (9th Cir. 2001) ...................................................44

*Bowles v. Washington Dep't of Ret. Sys.,*
  847 P.2d 440 (Wash. 1993) .....................................................43

*Brown v. Legal Found. of Wash.,*
  538 U.S. 216 (2003)..............................................45, 46, 47, 50

*Burton v. State Farm Mut. Auto. Ins. Co.,*
  105 F. App'x 154 (9th Cir. 2004) ............................................31

*Danjaq LLC v. Sony Corp.,*
  263 F.3d 942 (9th Cir. 2001) ..............................................31, 32

*Davidson v. O'Reilly Auto Enters.,*
  968 F.3d 955 (9th Cir. 2020) ...................................................31

*Domain Prot., L.L.C. v. Sea Wasp, L.L.C.,*
  23 F.4th 529 (5th Cir. 2022) ...................................................45

*Dowell Co. v. Gagnon,*
  677 P.2d 783 (Wash. Ct. App. 1984)......................................29

*El Paso Natural Gas Co. v. Neztsosie,*
  526 U.S. 473 (1999).................................................................45

*Foman v. Davis,*
  371 U.S. 178 (1962).................................................................27

*Fowler v. Guerin,*
515 P.3d 502 (Wash. 2022) ...............................................................36

*Fowler v. Guerin,*
899 F.3d 1112 (9th Cir. 2018) ...................................................*passim*

*Gonzalez v. Arizona,*
677 F.3d 383 (9th Cir. 2012) ............................................................38

*Good News Club v. Milford Cent. Sch.,*
533 U.S. 98 (2001)............................................................................27

*Goodman v. Goodman,*
907 P.2d 290 (Wash. Ct. App. 1995).................................................43

*Ingle v. Cir. City,*
408 F.3d 592 (9th Cir. 2005) ............................................................38

*Jeffries v. Wood,*
114 F.3d 1484 (9th Cir. 1997) ....................................................38, 39

*Johnson v. Barr,*
79 F.4th 996 (9th Cir. 2023) .............................................................44

*Jones v. Blanas,*
393 F.3d 918 (9th Cir. 2004) ............................................................37

*Kobold v. Good Samaritan Regional Medical Center,*
832 F.3d 1024 (9th Cir. 2016) ......................................21, 33, 34, 36

*Las Vegas Sands, LLC v. Nehme,*
632 F.3d 526 (9th Cir. 2011) ............................................................44

*Manufactured Home Comm. v. City of San Jose,*
420 F.3d 1022 (9th Cir. 2005) ..........................................................41

*New Hampshire v. Maine,*
532 U.S. 742 (2001)....................................................................33, 40

*Pace Indus., Inc. v. Three Phoenix Co.,*
813 F.2d 234 (9th Cir. 1987) ............................................................30

- v -

*Papasan v. Allain*,
   478 U.S. 265 (1986).............................................................32

*Probst v. Dep't of Ret. Sys.*,
   271 P.3d 966 (Wash. Ct. App. 2012)..............................................*passim*

*Probst v. Dep't of Ret. Sys.*,
   No. 45128–0–II, 2014 WL 7462567 (Wash. Ct. App. Dec. 30,
   2014) (unpublished).........................................................9, 42

*Retired Pub. Employees Council v. State*,
   16 P.3d 65 (Wash. Ct. App. 2001)..............................................43

*Russell v. Rolfs*,
   893 F.2d 1033 (9th Cir. 2007) ..............................................33, 40

*In re Sanford Fork & Tool Co.*,
   160 U.S. 247 (1895)..........................................................26

*Schneider v. California Dep't of Corrections*,
   151 F.3d 1194 (9th Cir. 1998) ................................................23

*Skok v. Snyder*,
   733 P.2d 547 (Wash. Ct. App. 1987)...........................................43

*State of Ariz. v. Shamrock Foods Co.*,
   729 F.2d 1208 (9th Cir. 1984) ................................................34

*Taylor v. Westly*,
   402 F.3d 924 (9th Cir. 2005) .................................................32

*United States v. Garcia-Beltran*,
   443 F.3d 1126 (9th Cir. 2006) ................................................21

*United States v. Good Samaritan Church*,
   29 F.3d 487 (9th Cir. 1994) ..................................................45

*United States v. Kellington*,
   217 F.3d 1084 (9th Cir. 2000) .............................................20, 21

- vi -

*Ventura Mobilehomes Cmtys. Owners Ass'n v. City of San
    Buenaventura*,
    371 F.3d 1046 (9th Cir. 2004) ............................................................37

*Washington Fed'n of State Employees v. State*,
    26 P.3d 1003 (Wash. Ct. App. 2001)...............................................43

*Williamson County Regional Planning Commission v. Hamilton Bank
    of Johnson City*,
    473 U.S. 172 (1985)...............................................................*passim*

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971)...............................................................20

**Statutes**

28 U.S.C. § 1291 ...............................................................................2

28 U.S.C. § 1331 ...............................................................................2

42 U.S.C. § 1983 ...............................................................*passim*

RCW 41.04.445...............................................................................6

RCW 41.40.795...............................................................................6

RCW 41.50.033...............................................................................39

WASH. REV. CODE § 41.32.010(38) ...............................................3

WASH. REV. CODE § 41.32.025 ......................................................3

WASH. REV. CODE § 41.32.8401 ................................................4, 51

WASH. REV. CODE § 41.50.030 ......................................................3

WASH. REV. CODE § 41.50.033 ......................................................9

WASH. REV. CODE § 41.50.075(2) ..................................................43

WASH. REV. CODE § 41.50.080 ......................................................43

WASH. REV. CODE § 41.50.270 ......................................................3

WASH. REV. CODE § 43.33A.030.................................................................43

**Other Authorities**

19 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE
    & PROCEDURE JURISDICTION § 4512 (3d ed.) (Apr. 2023 update)......................51

Fed. R. Civ. P. 15 ...............................................................................19, 27

Fed. R. Civ. P. 15(a).................................................................................20

Fed. R. Civ. P. 15(a)(2)............................................................................27

Fed. R. Civ. P. 23(b)(2)............................................................................24

Fed. R. Evid. 402 .....................................................................................51

WASH. ADMIN. CODE § 415-02-150(3) (2022) ........................................33

WASH. ADMIN. CODE § 415-02-150(3)–(4) (2022)............................17, 18

# I.    INTRODUCTION

Plaintiffs Mickey Fowler and Leisa Maurer are public school teachers in Washington state. In the late 1990s they moved from Teachers Retirement System ("TRS") Plan 2 to TRS Plan 3. They contend that, when they did so, the Washington Department of Retirement Systems ("DRS") failed to credit them with the proper amount of interest.

In 2006, plaintiffs discovered the interest shortfall of which they complain. They joined an ongoing state-court lawsuit in which another public employee, Jeffrey Probst, was pursuing state-law claims against DRS. That lawsuit led to decisions by the Washington Court of Appeals in 2012 and 2014 and a remand to DRS in 2013.

In 2015, dissatisfied with the outcome of the state-court litigation and the pace of DRS rulemaking, plaintiffs sued the director of DRS (the "Director") in the U.S. District Court for the Western District of Washington. Plaintiffs sought declaratory and injunctive relief based on DRS's alleged violation of the Fifth Amendment's Takings Clause. The district court granted summary judgment to the Director because, it believed, plaintiffs' taking claim was not ripe for review. This Court reversed, holding that the claim <u>was</u> ripe for review: plaintiffs stated a *per se* takings claim for the deprivation of property that, they had alleged, took place in the 1990s. *Fowler v. Guerin*, 899 F.3d 1112 (9th Cir. 2018) ("*Fowler I*"). The Court remanded

- 1 -

the case to the district court, directing it to determine (among other things) if plaintiffs should be granted injunctive relief.

The Director sought and was given leave to amend her answer to raise a statute-of-limitations defense. Both parties then moved for summary judgment. The district court granted the Director's motion, albeit on only one of the two grounds asserted: the statute of limitations. The court entered a final judgment dismissing plaintiffs' takings claim. This appeal followed.

## II.    STATEMENT OF JURISDICTION

The district court had jurisdiction over plaintiffs' takings claim under 28 U.S.C. § 1331. On May 19, 2023, the district court entered final judgment dismissing that claim. Plaintiffs filed their notice of appeal on June 15, 2023. This Court has jurisdiction under 28 U.S.C. § 1291.

## III.    ISSUES PRESENTED FOR REVIEW

1.    Did the district court follow this Court's mandate and act within its discretion when it granted the Director leave to amend her answer?

2.    Did the district court properly apply the law when it determined that the statute of limitations bars plaintiffs' federal lawsuit?

3.    Does the absence of harm resulting from the claimed taking provide an alternative basis to affirm the district court's judgment of dismissal?

## IV.   STATEMENT OF THE CASE

### A.   DRS sets interest policy as part of administering state retirement plans.

DRS is a state agency that administers Washington's public pension systems. WASH. REV. CODE § 41.50.030. DRS collects pension contributions from public employers and employees, determines service credit, and decides pension benefit eligibility. *See*, *e.g.*, WASH. REV. CODE § 41.50.270; WASH. REV. CODE § 41.32.025.

In 1976, the Washington Legislature authorized the Director to determine the rate and method of determining "regular interest" in TRS Plan 2. *See* WASH. REV. CODE § 41.32.010(38) (defining "regular interest"). DRS issued a policy memorandum in 1977 establishing an annual rate of 5.5% for regular interest, which DRS credited and compounded quarterly at the rate of 1.375% based on the previous quarter's accumulated balance. *Probst v. Dep't of Ret. Sys.*, 271 P.3d 966, 972 (Wash. Ct. App. 2012) ("*Probst I*"). Under the 1977 policy, retirement funds did not earn interest for partial quarters. That is, DRS did not attribute interest to each day between quarter end dates. *Id.*

Plaintiffs were members of TRS Plan 2, which is a defined benefit plan that provides a fixed, pre-established benefit for teachers at retirement. 2-SER-278, ¶ 10. For TRS Plan 2 members, DRS tracked regular interest under the 1977 policy as an accounting matter. But the amount of accumulated contributions (including interest) did not factor into any member's retirement benefit. *Id.* ¶¶ 10–11. The benefit TRS

- 3 -

Plan 2 members receive is tied to concluding salary levels and length of service; it is not based on the amount of contributions and regular interest. *Id.*

In the 1990s, Washington created TRS Plan 3, a hybrid plan with defined-benefit and defined-contribution elements. 2-SER-279, ¶ 15. Washington offered TRS Plan 2 members the opportunity to transfer to TRS Plan 3. 2-SER-280, ¶ 17. Members who chose to move from TRS Plan 2 to TRS Plan 3 had all their contributions and regular interest (as calculated under the 1977 policy) transferred into TRS Plan 3. 2-SER-279–80, ¶¶ 15–17. Underlying plaintiffs' takings claim is their allegation that DRS, in applying the 1977 policy, did not transfer daily interest as they contend it should have when they moved from TRS Plan 2 to TRS Plan 3 between 1996 and 2002. 2-ER-353–64.

The Washington Legislature provided that TRS Plan 2 members who transferred within an initial period would receive "Transfer Payments" in addition to their contributions and regular interest. 2-SER-280, ¶ 17; WASH. REV. CODE § 41.32.8401. Most Plan 2 members who transferred, including plaintiffs, did so during this initial period. They received Transfer Payments equal to 65 percent of the sum of their contributions and regular interest. 1-SER-257–58, ¶¶ 8–13.

Transfer Payments were much larger than the amounts of daily interest that plaintiffs claim as a taking. For example, Mickey Fowler and Leisa Maurer received

Transfer Payments of $24,018 and $28,661, respectively, when they transferred from TRS Plan 2 to TRS Plan 3. 2-SER-285–86, ¶ 37. They allege that DRS failed to pay them $276.97 and $392.24, respectively, in daily interest. 3-SER-705, ¶ 7.

The Director submitted evidence that the Transfer Payments operated as a "balancing item" to achieve a cost-neutral result for the retirement fund when members transferred from TRS Plan 2 to TRS Plan 3. 1-SER-258, ¶ 12; 2-SER-281, ¶ 21. The Washington State Actuary testified that the purpose of the Transfer Payments was to make sure that all money in the TRS Plan 2/3 trust fund that could be allocated to transferring members was, in fact, allocated to them. 1-SER-259, ¶ 15; 2-SER-283, ¶ 26. This included any funds that might otherwise have been transferred into members' accounts in the form of daily interest, along with accumulated investment earnings. 2-SER-283–84, ¶¶ 26–27.

## B. State-court litigation addressed claims brought under the Washington Administrative Procedure Act.

Between 2003 and 2014, DRS litigated administrative challenges to the 1977 policy and follow-on appeals that were filed in state court. In 2003, Jeffrey Probst filed an administrative petition with DRS seeking to challenge the 1977 policy and

to receive additional interest as earned daily rather than quarterly. 2-SER-324.[1] DRS denied the petition, and the DRS Presiding Officer denied a subsequent challenge to that decision. *Id.*

In 2005, Probst filed pleadings in state court to challenge DRS's decision. The pleadings alleged a putative class action on behalf of "all former, current and future members of the state retirement systems with claims for accrued interest under RCW 41.04.445." 2-SER-321–27; 2-SER-328–33. Probst alleged that "DRS has violated its fiduciary and statutory duties, including RCW 41.04.445 and RCW 41.40.795, by failing to calculate and pay accrued interest to Probst and members of the class." 2-SER-324. Probst also challenged the 1977 policy as contrary to Washington statutes and as arbitrary and capricious under the Washington Administrative Procedure Act ("APA"). 2-SER-332–33. Probst did not allege any form of a takings claim in his 2005 pleadings. *Id.*

The parties partially settled the *Probst* action on November 30, 2007, leaving only a separate putative class of individuals who transferred from TRS Plan 2 to TRS Plan 3 before January 20, 2002. 2-SER-340–66. On November 25, 2008, the

---

[1] Probst was a member of the Public Employees' Retirement System or "PERS," which is separate from but similar to TRS. DRS applied the 1977 policy to transfers between PERS Plan 2 and PERS Plan 3.

Fowlers[2] joined the state-court case to represent the TRS Plan 3 members carved out of the Settlement Agreement. 2-SER-367–72. The Fowlers first learned that they did not receive daily interest in June or July 2006. 2-SER-406, ¶ 11; 2-SER-454, ¶ 5.

To replace Probst as named plaintiffs, the Fowlers filed a "Supplemental Complaint - Class Action" and then an "Amended Supplemental Complaint." 2-SER-367–78. Neither the Supplemental Complaint nor the Amended Supplemental Complaint contained any new claims against DRS. *Id.*

## C. The state-court litigation did not address any takings claim.

In this appeal, as before the district court, plaintiffs suggest that the state court ruled the Fowlers had timely pleaded a "takings" claim. Blue Br. at 12. This is not true. In the state case, DRS argued that the statute of limitations barred the Fowlers' state-law claims. 1-SER-124–183. No takings claim was at issue. *Id*. In state court, the Fowlers described the statute-of-limitations issue as follows: "there is a three-year statute of limitations on 'actions' alleging breach of state employee pension rights." 1-SER-155. The Fowlers also argued: "This [state court] case is not a 'civil action' in the usual sense because it is technically an appeal under the APA from a request by Jeff Probst to correct accounting errors."[3] *Id*., n.2.

---

[2] Mickey Fowler and Leisa Maurer were then married; her name was Leisa Fowler.

[3] Plaintiffs assert that the Director "expressly admitted she had lost the statute of limitations defense in state court." Blue Br. at 12. But the allegation to which the

**D.    The state-court litigation resolved the Fowlers' claim for relief under the Washington Administrative Procedure Act.**

In July 2010, the state trial court dismissed the claims that the Fowlers had brought on behalf of transferees from TRS Plan 2 to TRS Plan 3. 3-SER-534–51. The state court did not consider or rule upon any purported "takings" claim, as the Fowlers had not made such a claim. *Id.* The state court's 2010 ruling described the only claims before it: "This class action has come before me in the nature of a judicial review under the Administrative Procedure[] Act. The administrative order, as it relates to this class, is affirmed. The Amended Supplemental Complaint is dismissed." 3-SER-551.

The Fowlers appealed the final order and judgment. The Washington Court of Appeals agreed with one of their arguments—namely, that DRS's continued use of the 1977 policy to implement transfers from TRS Plan 2 to TRS Plan 3 without subsequent re-evaluation was "arbitrary and capricious." *Probst I*, 271 P.3d at 971–

---

Director's admission was addressed said that plaintiffs filed a supplemental state-court complaint in 2009 and that the state court ruled that their "claim was not barred by the statute of limitations under the discovery rule." 2-ER-361 (Compl. ¶¶ 58–59); 2-ER-349 (Answer ¶¶ 58–59). The "claim" at issue in state court was, in plaintiffs' own words, a "breach of state employee pension rights" filed as "an appeal under the APA." 1-SER-155, n.2.

73. The *Probst I* court "accordingly reverse[d] DRS's order as it pertains to the class that the Fowler's [sic] represent and remand[ed] for further proceedings." *Id.* at 973.[4]

On remand after *Probst I*, the state trial court held that DRS had authority under the APA to conduct further rulemaking, and it remanded the matter to DRS. *Probst v. Dep't of Ret. Sys.*, No. 45128–0–II, 2014 WL 7462567, at *6 (Wash. Ct. App. Dec. 30, 2014) (unpublished) ("*Probst II*"). The Fowlers appealed. The Washington Court of Appeals affirmed, holding that the superior court "correctly ruled that the APA applied to the case and properly remanded the action to the DRS for proceedings consistent with our opinion in *Probst [I]*." *Id.* The *Probst II* court further held that any arguments as to whether a potential new administrative rule under WASH. REV. CODE § 41.50.033 might be an unconstitutional "taking" were speculative and premature because DRS had not made or applied a new rule. *Id.*

**E.    Plaintiffs shopped for a new forum and sued in federal court.**

Displeased with the outcome of the state-court litigation, in 2015 plaintiffs filed a new action in district court. 2-ER-353–64; 1-ER 25. Their complaint alleged

---

[4] *Probst I* noted that the Fowlers had made a constitutional avoidance argument that Washington statutes should be interpreted in a manner that did not result in a taking of property. But *Probst I* did not acknowledge any takings <u>claim</u>: "Because we decide this case on the grounds of arbitrary and capricious agency action, we do not reach the Fowlers' constitutional takings <u>argument</u>." *Id.* at 183 n.1 (emphasis added).

a single claim against the Director: a violation of the Takings Clause of the Fifth Amendment, which they asserted under 42 U.S.C. § 1983. 2-ER 363.[5]

The Director answered and asserted several affirmative defenses. 2-ER 342–52. The Director immediately moved for summary judgment based on some of those defenses, including that plaintiffs' takings claim was "(1) barred by the Eleventh Amendment; (2) barred by the *Rooker-Feldman* doctrine; (3) barred by the issue or claim preclusion doctrines; (4) not ripe for review; and (5) meritless since plaintiffs are not entitled to daily interest (i.e., no taking occurred)." 2-ER-328–341. The Director did not seek summary judgment on other affirmative defenses, including the *Younger* abstention doctrine. *See* 2-ER-352.

**F.  The district court dismissed plaintiffs' takings claim as unripe.**

In 2015, the Director argued on summary judgment that the takings claim was not ripe and would not become ripe until DRS issued a formal administrative decision. 2-ER-339–40. Plaintiffs opposed, arguing that their takings claim was ripe regardless of any administrative action. 1-SER-017–18. They stated: "There is no

---

[5] Plaintiffs state that the parties entered a "stipulation that the federal case was a continuation of the state case." Blue. Br. at 8. They cite (i) a declaration from their counsel (2-ER-309), (ii) a Joint Status Report discussing the parties' discovery plan (2-ER-323–25), (iii) and the Director's motion for summary judgment (2-ER-329, 333). Not one of these documents is a stipulation or identifies any "agreement" that the federal case was a continuation of the state-court case.

<u>federal</u> ripeness issue here because the interest to which plaintiffs are entitled is not dependent on any state statute or rule, nor are plaintiffs seeking judicial review of any agency rule or policy." 1-SER-018 (emphasis original). Plaintiffs argued that their taking claim became ripe when DRS withheld daily interest from the putative class of TRS members who transferred from TRS Plan 2 to TRS Plan 3 between 1996 and 2002. 1-SER-007–9, 017–18.

The district court requested supplemental briefing on the question of whether plaintiffs' claim was ripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). 1-ER-80–82. DRS argued that plaintiffs' claim was not ripe under *Williamson County* because DRS had not issued a new agency rule and plaintiffs had not exhausted their state-court remedies. 1-SER-023–28. In response, plaintiffs argued that the alleged withholding of daily interest was a "categorical" or "*per se*" taking, to which *Williamson County* did not apply. 2-ER-299–307. The district court agreed with DRS and dismissed plaintiffs' claim as not ripe under *Williamson County*. 1-ER-072–79. They appealed.

## G. This Court reversed the district court, holding that plaintiffs had stated a claim for a *per se* taking.

In *Fowler I*, this Court considered the arguments raised in the Director's early summary judgment motion. 899 F.3d 1112. Plaintiffs argued that "the Director's retention and continued withholding of some interest earned on the Teachers'

accounts" was a taking irrespective of any future DRS rulemaking. 4-SER-765.[6] Plaintiffs relied on the ongoing denial of their "'rights to possess, use and dispose of' their money" as a basis to satisfy the Article III ripeness requirement. 4-SER-768.

This Court accepted plaintiffs' argument that they had alleged a *per se* taking, and it held that the *Williamson County* ripeness test for regulatory takings did not apply. 899 F.3d at 1116–18. The Court stated that plaintiffs "bring a *per se* taking claim because DRS's withholding of interest earned on funds in interest-bearing accounts is a direct appropriation of private property." *Id.* at 1117. The Court did not suggest that the takings claim became ripe in 2018 when DRS issued a new rule retroactively affirming its 1977 policy (the "2018 Rule").[7] *Id.*

This Court also addressed the other grounds for summary judgment raised in the Director's motion. *Id.* at 1118–21. The Court rejected the Director's arguments based on (i) failure to state a claim, (ii) issue preclusion and *Rooker-Feldman*

---

[6] Plaintiffs also argued in *Fowler I* that, "[w]hen there is a *per se* taking of property by the government, as here, a lawsuit for injunctive relief requiring the government to return the property presents a concrete dispute." 4-SER-757.

[7] Plaintiffs now suggest that this Court relied on the 2018 Rule for its ripeness determination, citing a comment from a 2019 brief filed by the Director's prior counsel in state court. Blue Br. at 12 (citing 2-ER-97). The comment was not material to the state-court issue and was an incorrect characterization of this Court's decision in *Fowler I*.

preclusion, and (iii) the Eleventh Amendment. *Id.* The *Fowler I* decision concluded with the following mandate: "we reverse the decision that this case is not ripe, and we remand for the district court to reconsider class certification and, if necessary, to permit further discovery before deciding if the class shall be given the requested injunctive relief." *Id.* at 1121.

The parties agree that what this Court did and did not decide in *Fowler I* is important. They do not agree on what that was. The Director reads *Fowler I* as holding that daily interest is a property interest protected by the Takings Clause and that the plaintiffs "stat[ed] a takings claim." 899 F.3d at 1119. Given the posture of the case, the Court did not go further. Because it was considering an order of summary judgment, the Court gave plaintiffs the benefit of all factual inferences on review. *See id.* at 1116 ("we view the facts in the light most favorable to the Teachers") and 1118 ("viewing the evidence in the light most favorable to the non-moving party").

This Court did not hold that there had been a violation of the Takings Clause, did not hold that DRS failed to provide "just compensation," and did not direct any particular relief. It remanded for the district court to decide "if the class shall be given the requested injunctive relief." *Id.* at 1120–21; *see also* 1-ER-054–55 (district court notes that "[r]ecognizing the existence of a right to daily interest is not

equivalent to deciding that relief is appropriate in this case and should be awarded to Plaintiffs.").

The Court also did not decide that the Director had "skimmed" uncredited interest from any teacher's retirement account. Blue Br. at 11. Consistent with the procedural posture of the case, the Court stated that "[plaintiffs] bring this class action to order the Director of [DRS] to return interest that was <u>allegedly</u> <u>skimmed</u> from their state-managed retirement accounts." *Id.* at 1115 (emphasis added).

## H. The district court resolved the case on remand when it dismissed plaintiffs' takings claim as barred by the statute of limitations.

After the mandate in *Fowler I* issued and the case returned to district court, the parties engaged in months of document discovery. 2-ER-269–70. They filed periodic status reports. *Id.* Until February 4, 2021, however, the district court did not establish a case schedule or set a trial date. 1-SER-209–10.

On October 29, 2020, the Director moved for leave to amend her answer to assert the statute of limitations as an affirmative defense. 2-ER-235–246; 1-SER-048–106. Plaintiffs opposed, arguing that (i) the state court resolved the statute-of-limitations defense; (ii) this Court's mandate precluded the addition of affirmative defenses; and (iii) the Director was barred by judicial estoppel from raising the statute of limitations. 2-ER-222–34; 2-ER-204–211; 1-SER-124–83. The district

court rejected plaintiffs' arguments and granted the Director leave to amend. 1-ER-50–56; *see* 2-ER-197–199 (Amended Affirmative Defenses).

On March 15, 2021, the parties filed cross-motions for summary judgment.[8] The cross-motions raised two issues. <u>First</u>, DRS argued that the statute of limitations barred plaintiffs' takings claim. <u>Second</u>, the parties asked the district court to resolve the question of whether the plaintiffs could prove any loss at the time their TRS Plan 2 funds transferred to TRS Plan 3 because, in addition to principal and interest, they received Transfer Payments. 1-SER-218–2-SER-494; 3-SER-532–664, 711–28.

**1.   The district court dismissed the case as time-barred.**

The Director's statute-of-limitations defense was predicated on the following: (i) the statute of limitations for a takings claim under 42 U.S.C. § 1983 is three years; (ii) a takings claim accrues when (a) a plaintiff's property was taken by the government, and (b) plaintiffs knew or had reason to know of the asserted injury; and (iii) the plaintiffs learned no later than July 31, 2006, that DRS did not include daily interest in the amounts transferred to their TRS Plan 3 accounts. 2-ER-185–89.

---

[8] Plaintiffs' Excerpt of Record includes incomplete copies of the cross-motions, the response briefs, and plaintiffs' reply brief at 2-ER-157–89, 2-ER-103–35, and 2-ER-98–102, respectively. The Excerpt of Record does not include any of the supporting declarations or the Director's reply brief. Complete copies of the cross-motions and supporting materials are found at 1-SER-218–2-SER-494; 3-SER-532–664, 711–28.

Plaintiffs did not dispute the legal standard, the dates on which DRS did not pay them daily interest, or the date when they learned of the facts. 2-ER-104–120. But they raised several arguments in opposition to the application of the statute of limitations, only one of which—ripeness—remains in this appeal. *Id.* Plaintiffs argued that the statute of limitations did not expire because their claim was ripe from 2006 to 2013, ceased being ripe from 2013 to 2018, and then became ripe again in 2018. 2-ER-104–12.

The district court rejected plaintiffs' argument. 1-ER-35–36. The court concluded that, consistent with this Court's decision in *Fowler I*, plaintiffs' takings claim was ripe in 2006, when they learned that DRS had not credited them with daily interest at the time of their transfer to TRS Plan 3, and this was not altered by later agency decision making:

> Finally, Plaintiffs contend that their injury became ripe twice— once upon discovery in 2006, and again in 2018 when DRS issued its new rule retroactively affirming its practice. This position cannot be reconciled with the Ninth Circuit's decision. The Circuit ruled that this Court was incorrect to conclude Plaintiffs' claims were prudentially unripe. *Fowler*, 899 at 1118. If this Court should have identified a *per se* taking in 2015, when administrative action was still pending, it cannot be that the claim was unripe at that time.

1-ER-35. The district court also noted that, if plaintiffs were correct that their takings claim first became ripe in 2018, this would mean their claim was <u>not</u> ripe when, in 2015, they filed their federal complaint. *Id.*  The district court held that plaintiffs'

taking claim was time-barred and entered a final judgment dismissing it with prejudice. 1-ER-002–16.

DRS's rulemaking did not change the amount of interest credited to plaintiffs or other TRS Plan 2/3 members. DRS handled regular interest the same way for 45 years, from 1977 to 2022. The 1977 policy applied from the time it was adopted until the Washington Court of Appeals, in 2012, held that DRS acted in an arbitrary and capricious manner by failing to reconsider it. *Probst I*, 271 P.3d at 972–73. Following remand to DRS for further rulemaking, DRS considered the adoption of a new rule but maintained its practice of crediting interest based on the balance from the prior quarter. 1-SER-011. The 2018 Rule, when adopted, continued that practice, and it applied retroactively. In 2022, DRS adopted a new rule that provides for interest to be credited on a daily basis, but that rule (the "2022 Rule") applies prospectively. *See* WASH. ADMIN. CODE § 415-02-150(3)–(4) (2022). The 2022 Rule did not change the way in which retirement-plan members had previously been credited interest.

### 2. The district court denied the Director's motion insofar as it sought summary judgment based on the absence of loss.

Plaintiffs asked the district court to hold that the absence of daily interest in the amounts transferred to their Plan 3 accounts constituted a taking for which they had not received just compensation. The Director asked the district court to hold that

plaintiffs incurred no net loss, either at the time of transfer or thereafter, because the Transfer Payments more than compensated them for the absence of daily interest. 1-SER-218–2-SER-494; 3-SER-532–664, 711–28.

In its July 2021 interim ruling on partial summary judgment, the district court held for the plaintiffs after ruling that it could not consider the Director's evidence regarding the Transfer Payments. 1-ER-027–31. The district court observed that "DRS's account of the legislature's intent is entirely plausible," but it nevertheless refused to consider any evidence drawn from legislative history. 1-ER-029–30. The district court accepted plaintiffs' argument that to do so would violate Washington's law of statutory construction. *Id.* Having determined that the Director's evidence could not be considered, the district court reasoned that there was no evidence showing plaintiffs had received "just compensation." Hence, they had established a loss on their taking claim. 1-ER-030–31.

The Director timely moved for reconsideration. 3-SER-729–35. The Director pointed out that the issue before the court was not statutory interpretation but rather the impact of the Transfer Payments on plaintiffs' retirement accounts and the TRS Plan 2/3 trust fund. DRS argued that the court should apply the Federal Rules of Evidence, rather than Washington rules for statutory construction, in considering evidence drawn from the legislative history of the Transfer Payments. 3-SER-730–

34. The district court did not rule on the Director's motion for reconsideration. Instead, on May 19, 2023, the court entered an order dismissing plaintiffs' claim as barred by the statute of limitations. 1-ER-002–16.

## V.     SUMMARY OF ARGUMENT

The district court was right to dismiss plaintiffs' takings claim as barred by the statute of limitations. In their effort to reverse that judgment, plaintiffs raise a plethora of arguments. Logically, the first issue is whether the mandate in *Fowler I* permitted the court to grant leave to amend. This Court's remand instructions, its opinion, and the procedural context and substantive law underlying the earlier appeal all establish that the district court had authority to grant the Director leave to amend her answer. The next issue is whether granting leave to amend was a proper exercise of the district court's discretion. It plainly was, given the permissive language of Rule 15.

This brings us to the crux of plaintiffs' appeal: whether, with the statute of limitations squarely before it, the district court was correct to conclude that plaintiffs' federal takings claim was time-barred. The district court reached the right conclusion: plaintiffs filed their federal lawsuit several years after the statute of limitations had expired. Plaintiffs' argument that their takings claim, concededly ripe in 2006, ceased to be ripe after the statute of limitations had expired and re-ripened in 2018, three years after they sued, has no merit.

The fact that plaintiffs received Transfer Payments far larger than the amount of interest they claim should have been credited to their accounts—payments that <u>included</u> the interest in question—provides an alternative basis to affirm. The district court refused to consider the Director's evidence on this point only because it applied a state-law rule governing statutory construction even though statutory construction was not at issue. Had the evidence been considered, as it should have been, it would have sufficed to defeat plaintiffs' Fifth Amendment claim.

## VI.   ARGUMENT

### A.   In granting leave to amend, the district court complied with this Court's mandate and did not abuse its discretion.

Plaintiffs assert that the district court violated this Court's mandate. They also assert that the district court erred when it granted leave to the Director to amend her answer and raise a statute-of-limitations defense. Neither assertion has merit.

### 1.   Standard of review

This Court reviews "de novo a district court's compliance with the mandate of an appellate court." *United States v. Kellington*, 217 F.3d 1084, 1092 (9th Cir. 2000). The district court's decision to grant the Director leave to amend her answer is reviewed for abuse of discretion. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971) ("It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."). This

Court reviews "'the district court's application of the doctrine of judicial estoppel to the facts of this case for an abuse of discretion.'" *Kobold v. Good Samaritan Regional Medical Center*, 832 F.3d 1024, 1044 (9th Cir. 2016) (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001)).

### 2. The district court satisfied the rule of mandate.

The rule of mandate requires a district court to follow this Court's directions when it takes up a case after remand. *See, e.g.*, *United States v. Garcia-Beltran*, 443 F.3d 1126, 1130 (9th Cir. 2006). "According to the rule of mandate, although lower courts are obliged to execute the terms of a mandate, they are free as to 'anything not foreclosed by the mandate[.]'" *Kellington*, 217 F.3d at 1092 (citation omitted). The question here, as in all such cases, is the scope of the appellate court's mandate.

In determining whether it may take a particular action after remand, a district court should consider not only the mandate itself but also the opinion of the appellate court, "as well as the procedural posture and substantive law from which it arises." *Id.* at 1093 (citing *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895)). "[T]he ultimate task is to distinguish matters that have been decided on appeal, and are therefore beyond the jurisdiction of the lower court, from matters that have not." *Kellington*, 217 F.3d at 1093.

Deciding whether the district court satisfied the rule of mandate in this case, therefore, requires examining this Court's remand instructions in *Fowler I*, the

- 21 -

Court's opinion, and the procedural posture and substantive law from which the earlier appeal arose. All three point to the same conclusion: nothing in this Court's mandate foreclosed the district court from permitting the Director to amend her answer.

First, the terms of the mandate are permissive rather than restrictive. In the concluding paragraph of *Fowler I*, this Court stated:

> [W]e reverse the decision that this case is not ripe, and we remand for the district court to reconsider class certification and, if necessary, to permit further discovery before deciding if the class shall be given the requested injunctive relief.

899 F.3d at 1120–21. The mandate directed the district court (1) to reconsider class certification, (2) to decide whether further discovery was warranted, and (3) to decide if the class should receive the relief it requested. The district court complied with these instructions. It granted class certification and authorized further discovery before deciding that the class could not be given the requested injunctive relief because its claim was barred by the governing statute of limitations.

Contrary to plaintiffs' argument, this Court's mandate does not suggest that liability was determined in the first appeal, leaving open only questions related to remedy. The mandate told the district court that it should decide if the class should receive the requested injunctive relief. "If" is equally susceptible of two answers: yes and no. Both answers are permitted, and neither is forbidden.

- 22 -

Second, the opinion that culminated in this mandate reinforces the conclusion that the Court did not resolve all liability issues. The paragraph introducing the opinion explains what was before the Court:

> The district court denied the stipulated motion to certify a class and then dismissed the action as prudentially unripe. We conclude that both of those decisions were in error.

899 F.3d at 1115. Part I of the Court's opinion, discussing the history of the case, confirms the issues before the Court. Part II, addressing ripeness, concludes that the district court erred in dismissing plaintiffs' takings claim as prudentially unripe.

Part III considers the three other grounds the Director offered in support of her motion for summary judgment. Although not reached by the district court, those grounds were relevant in *Fowler I* because they might provide an alternative basis to affirm. *See id.* at 1118. Applying the test for reviewing summary judgments, the Court rejected each of these grounds. It held that the right to interest earned on one's funds is protected by the Constitution and does not depend on state-law recognition. Under *Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1201 (9th Cir. 1998), "interest income earned on an interest-bearing account" is a fundamental property right. And because that right covers interest earned daily, "the teachers state a takings claim for daily interest withheld by DRS." 899 F.3d at 1119.

The Court also held that no state-court judgment had resolved the precise issues presented in this case and that plaintiffs were not seeking relief from the state

court's judgments. Hence, neither issue preclusion nor the *Rooker-Feldman* doctrine barred their takings claim. *Id.* Finally, the Court held that plaintiffs' claim did not implicate the Eleventh Amendment. *Id.* at 1120. "In sum, none of the Director's alternative arguments justifies the district court's grant of summary judgment in this case." *Id.*

Part IV of the Court's opinion addresses class certification, which the district court denied "[b]efore mistakenly granting summary judgment." *Id.* The Court held that plaintiffs' claim could be certified for class treatment under Rule 23(b)(2). *Id.*

In sum, the opinion in *Fowler I* describes precisely the set of issues that were before this Court. Nothing in the opinion supports plaintiffs' assertion that the Court determined all liability issues and left only questions of relief for the district court to consider.

Third, the procedural posture of the earlier appeal and the substantive law underlying that appeal confirm the limited scope of the mandate. When this Court heard the first appeal, the district court had not considered the evidence. Nor had it made any findings of fact. Rather, in granting summary judgment just a few months after the case was filed, the district court decided that, given the status of proposed rulemaking, plaintiffs' taking claim was not ripe for adjudication. The substantive issue before this Court was whether plaintiffs had alleged a justiciable Fifth

Amendment takings claim. The issue was <u>not</u> whether they had proved all the elements of an uncompensated taking.

When this Court reversed and remanded, it directed the district court to consider the merits of appellants' claim and decide whether they should receive relief. The Court did not purport to decide, nor could it decide, any issue beyond those raised on appeal from an order granting summary judgment.[9] Hence, considering the procedural posture and substantive law underlying the earlier appeal reinforces the conclusion that the mandate did not foreclose the district court from granting the Director's motion for leave to amend.

Plaintiffs cite several cases that discuss the rule of mandate, but not one of them supports their claim that the district court here erred. To the contrary, case law underlines the correctness of the district court's decision to permit the Director to

---

[9] This Court began its analysis by noting that, because the district court's dismissal was entered on summary judgment, "we view the facts in the light most favorable to the Teachers." *Id.* at 1116. In considering potential alternative grounds for summary judgment, this Court reiterated that it was "viewing the evidence in the light most favorable to the non-moving party." *Id.* at 1118.

Plaintiffs suggest that the facts were stipulated. Not so. Apart from the absence of any document denominated a stipulation of facts, an agreement that relevant facts may be drawn from a particular source—for example, the administrative record compiled in plaintiffs' state-court appeal—does not constitute an agreement as to which facts are relevant or what inferences those facts permit. The Director also never agreed to, but specifically denied, plaintiffs' allegations that interest had been withheld from them and remained in the TRS Plan 2/3 trust fund. *Compare* 2-ER-353–354 (Compl., ¶¶ 3–4, 8) *with* 2-ER-342–343 (Answer, ¶¶ 3–4, 8).

amend her answer. In *Sanford Fork & Tool*, the Supreme Court held that the lower court was free to grant the plaintiff leave to amend on remand where this was "left open by the opinion and mandate of this court, and by the general rules of practice in equity." 160 U.S. at 255. In *Nguyen v. United States*, this Court held that a mandate ordering entry of summary judgment in favor of the defendant required the district court to enter summary judgment, but it did not preclude the court from allowing the plaintiff to amend his complaint immediately thereafter. 792 F.2d 1500, 1502 (9th Cir. 1986). And in *Walgreen Arizona Drug Co. v. Levitt*, this Court held that the district court erred in refusing to permit defendants, following remand, to raise their affirmative defenses to liability. 670 F.2d 860, 861 (9th Cir. 1982).

Plaintiffs argue that, under the rule of mandate, a defendant may not raise a new defense "after the Court remands on one specific issue." Blue Br. at 31. Even if true, this point is irrelevant because the Court did not remand on one specific issue. Rather, it resolved one specific issue (ripeness), determined that the Director's three other grounds for summary judgment did not provide an alternative basis to affirm, and remanded for further proceedings.

Plaintiffs also assert that this Court meant "to dispose of all issues relating to liability and all affirmative defenses." Blue Br. at 32. The Court could not do this even if it wished to, because the Director raised affirmative defenses in addition to

those she asserted as grounds for summary judgment.[10] Neither the district court nor this Court considered those other affirmative defenses in *Fowler I*.

Reversal of a grant of summary judgment means that a case must be resolved on some basis other than the one rejected by the appellate court.[11] Often, the trier of fact must hear evidence before resolving genuine issues of material fact. A party may also raise a different legal issue that results in summary disposition. The Court's mandate foreclosed none of these possibilities. The issue, then, is whether the district court had authority under the Federal Rules of Civil Procedure to grant the Director leave to amend her answer. To that issue we now turn.

### 3. The district court did not abuse its discretion in granting the Director leave to amend.

Rule 15 is a rule of liberality: it tells courts that leave to amend should be freely given. *See* Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Nevertheless, the district court gave careful consideration to plaintiffs' objections. *See* 1 ER-051–056. Plaintiffs opposed the Director's motion on three grounds: (1) the state court had already decided the statute-of-limitations defense against her; (2)

---

[10] *See* 2-ER-351–52 (setting forth three affirmative defenses in addition to those raised in the Director's motion for summary judgment, including *Younger* abstention).

[11] "To deny one party's motion for summary judgment . . . is not to grant summary judgment for the other side." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 129 (2001) (Breyer, J., concurring in part).

amending the pleadings would exceed the scope of this Court's mandate; and (3) judicial estoppel barred the Director from raising a statute-of-limitations defense. 1-SER-109–20. Plaintiffs repeat the same arguments in their opening brief. None of them has merit.

### a. The state court's statute-of-limitations ruling cannot help plaintiffs.

The state court ruled that the statute of limitations for plaintiffs' state-law claims (claims for breach of contract and violation of state law) began to run when, in 2006, they discovered the basis for such claims. 3-SER-534–51; *see Probst I*, 271 P.3d at 968. The state-law claims that plaintiffs asserted in state court were, therefore, timely.[12] The same thing cannot be said of plaintiffs' federal lawsuit. Because the statute of limitations for a claim brought under Section 1983 is three years, plaintiffs had to file their claim in federal court by 2009. Instead, they filed their federal lawsuit in 2015, six years after the statute of limitations had expired.

Although plaintiffs assert that the state court decided the same statute-of-limitations defense as the federal court, this is wrong. No state court considered the

---

[12] As the Blue Brief notes at 41, the Director admitted that Superior Court Judge "Casey ruled Plaintiffs' claim was not barred by the statute of limitations pursuant to the discovery rule." *See* 2-ER-349. "Plaintiffs' claim" here refers to the claim plaintiffs asserted in state court—namely, that DRS's interest policy violated Washington law—and not the takings claim that they brought years later in federal court. *See* 2-ER-361 (Compl., ¶¶ 58–59).

statute of limitations for a takings claim, because plaintiffs did not bring such a claim in state court. 1-SER-124–83. Plaintiffs' 2009 statute-of-limitations briefing discussed the limitations period for a "claim for state employee pension plan rights . . .." 1-SER-147–68. Plaintiffs' briefing did not discuss the statute of limitations for a takings claim, because they did not assert that claim in state court. *See* 1-SER-155–67. The district court so held, *see* 1-ER-32–34, and its determination is clearly correct.[13]

Even if plaintiffs could point to a ruling that their takings claim was timely raised in state court, and they cannot do so, such a ruling would not establish the timeliness of the claim that they filed many years later in federal court. Under Washington law, the pendency of one action does not toll the statute of limitations for a second one. *See Dowell Co. v. Gagnon*, 677 P.2d 783, 784 (Wash. Ct. App. 1984); *Blatt v. Deede*, 135 F. App'x 968 (9th Cir. 2005).[14] The same thing is true under federal law: "Prior judicial actions . . . 'do not toll the statute of limitations,

---

[13] The district court's holding controls here. Rather than challenge it, plaintiffs quote snippets from the Director's old briefs that used imprecise language to summarize lengthy and complex proceedings. What actually happened matters far more than how someone later described it.

[14] In district court, plaintiffs tried to distinguish *Dowell* on its facts, but as the district court noted, their purported "distinction does not advance their claim that a previously-filed state claim tolls the statute of limitations for a later-filed federal claim asserting a different claim for relief based on the same facts." 1-ER-034. Plaintiffs do not even mention *Dowell* in this appeal.

no matter how close their relationship to the one at bar.'" *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 240 (9th Cir. 1987) (citations omitted). Plaintiffs ignore this point, which is fatal to their argument.

### b. The mandate does not address the statute of limitations.

As explained above, the mandate in *Fowler I* did not preclude the district court from considering the Director's motion for leave to amend. In addition to urging an overbroad reading of the mandate, plaintiffs argue that the mandate must be understood to foreclose the particular affirmative defense at issue here. They contend that, in resolving the Director's Eleventh Amendment argument, the Court silently knocked off any potential defense based on a statute of limitations. Blue Br. at 33–36. They are wrong.

It is hardly surprising that this Court did not discuss the statute of limitations in *Fowler I*, since that issue was not before the Court. There is also no indication that the Court considered the statute of limitations when it addressed the Director's Eleventh Amendment argument for affirmance. Citing *Taylor v. Westly*, 402 F.3d 924 (9th Cir. 2005), the Court held that the Eleventh Amendment did not apply for two reasons: plaintiffs were seeking prospective injunctive relief, and the funds in question were not the State's money. *Fowler I*, 899 F.3d at 1120.

Seizing upon the first point, plaintiffs argue that no statute of limitations can apply to a claim seeking prospective injunctive relief. There are several problems

with this argument. <u>First</u>, it was not raised in the district court and so is not properly raised here. This Court "routinely prevents parties from sandbagging their opponents and the district court with new arguments on appeal." *Davidson v. O'Reilly Auto Enters.*, 968 F.3d 955, 966 (9th Cir. 2020) (cleaned up); *see, e.g.*, *Burton v. State Farm Mut. Auto. Ins. Co.*, 105 F. App'x 154, 157 (9th Cir. 2004) ("Arguments raised for the first time on appeal cannot be considered.").

<u>Second</u>, issues relating to remedies and the scope of the Eleventh Amendment are very different from the considerations that underlie statutes of limitation. This Court did not purport to opine that, because plaintiffs proposed an equitable remedy rather than an award of damages, they could pursue a stale claim.

<u>Third</u>, plaintiffs fail to establish that the law supports their bold assertions about prospective injunctive relief. They also cannot establish that the legal principle they invoke applies here. Plaintiffs assert that the "only time-bar consideration for prospective injunctive relief is laches," citing *Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001). Blue Br. at 34–35. But *Danjaq*, a case arising from dueling claims to copyright in the James Bond film series, said no such thing. The Court there held that, though laches typically does not bar prospective injunctive relief, it can where (as in that case) "the defendant will be substantially prejudiced in its ability to defend future claimed infringements in just the same way that it was

- 31 -

prejudiced with regard to prior alleged infringements." *Id.* at 960. For similar reasons, the Court held, laches could bar a claim for infringement brought within the statute of limitations, which restarts whenever a copyrighted work is released in a new form (e.g., on DVD). *Id.* at 954. The *Danjaq* Court did not suggest that statutes of limitations are irrelevant or that they cannot bar claims seeking prospective injunctive relief.

Here, moreover, plaintiffs' amended complaint sought not only an injunction but also a declaration that DRS violated their rights by actions it took in the 1990s. 2-ER-363. As this Court acknowledged in *Taylor v. Westly*¸ "to the extent the plaintiffs sought a declaratory judgment that [their escheated property was] unconstitutionally taken from them, and an injunction that the state pay them money to compensate them, the claims would <u>not</u> fall within the *Ex parte Young* prospective relief exception to the Eleventh Amendment." 402 F.3d at 935 (emphasis added). What saved the claims asserted in *Taylor v. Westly* was that some were genuinely prospective: they sought changes in California's escheat policy going forward. *See id.* at 935–36.[15] In this case, by contrast, plaintiffs disavow seeking any change in

---

[15] *Cf. Papasan v. Allain*, 478 U.S. 265, 276–78 (1986) (*Ex parte Young* creates an exception to the Eleventh Amendment bar on suits against a state in federal court where a state official is engaged in a continuing violation of federal law and the suit seeks prospective injunctive relief to stop that violation).

DRS's current interest-rate policy. They admit that since 2022 DRS has credited interest in exactly the way they wish. *See* WAC 415-02-150(3) (2022); Blue Br. at 15–16. The only injunctive relief plaintiffs request is a remedy for the decades-old application of prior policy: an injunction requiring the Director to transfer additional funds into their TRS Plan 3 accounts.

**c.** **Judicial estoppel does not bar the Director from raising the statute of limitations as an affirmative defense.**

Plaintiffs argue that the Director should be estopped from raising the statute of limitations because she earlier argued that plaintiffs' takings claim was not ripe for adjudication. The district court considered the same judicial-estoppel argument before rejecting it. 1-ER-031; 1-ER-055–056. The court did not abuse its discretion when it declined to accept plaintiffs' argument. *See Kobold*, 832 F.3d at 1044.

The doctrine of judicial estoppel prevents a party that has convinced a court of one position from taking the opposite position later. *See, e.g.*, *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 2007). As the Supreme Court put it, judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). In such circumstances, judicial acceptance of inconsistent

- 33 -

positions "would create 'the perception that either the first or the second court was misled.'" *Kobold*, 832 F.3d at 1045 (citation omitted).

In this case, as the district court observed, plaintiffs' judicial-estoppel argument cannot clear its first hurdle, because the Director did not prevail on her ripeness argument in *Fowler I*. This Court squarely rejected the Director's argument when it held that plaintiffs had alleged a *per se* taking. 899 F.3d at 1117–18. Such a claim is ripe, and can be adjudicated, as soon as it happens: "A *per se* taking triggers a 'categorical duty to compensate the former owner' under the Takings Clause." *Id.* at 1117 (citation omitted).

To be sure, the district court earlier accepted the Director's ripeness argument, but that does not matter: this Court rejected it. As the district court held following remand, a party may advance a good-faith legal position and, "when faced with a new legal holding," explore other available positions. 1-ER-056. Judicial estoppel does not apply to a party whose earlier argument failed. *Cf. State of Ariz. v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir. 1984) (no judicial estoppel when a party changes its position in response to a change in the law).

Plaintiffs argue, however, that the Director should be estopped from raising the statute of limitations here because DRS convinced the state courts to postpone consideration of DRS's policy until it adopted a new rule. The district court rejected

that argument, too. At issue before the state courts were arguments about whether DRS's policy violated the State's contract with its employees, as reflected in state retirement statutes. The state court of appeals held that applying the 1977 policy on interest without reexamination was arbitrary and capricious, requiring a remand to the agency. *Probst I*, 271 P.3d at 971–73.[16] In the context of a challenge to a state policy brought as an administrative appeal under the Washington APA, it made sense for the state courts to conclude that the rule-making process should be allowed to play out before they decided whether the yet-to-be-adopted rule comports with state law.

This Court confronted and decided a different issue in *Fowler I*. Its decision was squarely based on Fifth Amendment takings law, something the state courts considered only tangentially when they evaluated the Fowlers' argument based on constitutional avoidance. There is no contradiction between *Probst I* and *Fowler I*, nor between the arguments that prevailed in each appeal.[17] Instead, it is the plaintiffs

---

[16] As the district court pointed out, the Washington Court of Appeals declined to address plaintiffs' takings argument in 2012 "not because it agreed the claim was unripe, but because Fowler had prevailed on his position that the DRS rule failing to consider daily interest was arbitrary and capricious." 1-ER-014.

[17] In *Fowler I*, this Court drew a sharp distinction between the Washington Court of Appeals' decision that plaintiffs' "speculation that the forthcoming DRS rulemaking would effect a taking" was premature, on the one hand, and "their argument here that DRS effected a taking by retaining some of their earned interest years ago." 899

---

who are now trying to secure an advantage by contradicting the argument that they advanced, and this Court accepted, in *Fowler I*.

**B.** **As the district court held, the statute of limitations expired years before plaintiffs filed their federal lawsuit.**

It is undisputed that the statute of limitations for a takings claim is three years; that plaintiffs learned the facts underlying their claim in 2006; and that they filed their federal lawsuit in 2015, six years after the statute of limitations had expired.

Despite these undisputed facts, the district court carefully considered the parties' arguments before deciding that plaintiffs' federal takings claim was time-barred. In response to plaintiffs' request for equitable tolling, the district court certified a question to the Washington Supreme Court to clarify the state-law test for equitable tolling. Only after the Washington Supreme Court rejected plaintiffs' interpretation of state law in *Fowler v. Guerin*, 515 P.3d 502 (Wash. 2022), did the district court rule that the statute of limitations had <u>not</u> been equitably tolled and that the Director was entitled to summary judgment dismissing plaintiffs' claim.

On this appeal, plaintiffs have abandoned any argument for equitable tolling of the three-year statute of limitations, as well as several other issues they raised below. They focus on ripeness, but their arguments do not withstand examination.

---

F.3d at 1119. *Cf. Kobold*, 832 F.3d at 1045 (for judicial estoppel to apply, a party's later position must be "clearly inconsistent" with its earlier position).

The district court was correct when it ruled that plaintiffs' federal lawsuit is time-barred.

### 1. Standard of review

Ripeness is a question of law, reviewed de novo. *Ventura Mobilehomes Cmtys. Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1050 (9th Cir. 2004). "A district court's dismissal of a claim based on a statute of limitations is reviewed de novo," as is a "district court's decision to grant or deny summary judgment . . .." *Jones v. Blanas*, 393 F.3d 918, 926 (9th Cir. 2004).

### 2. A *per se* takings claim is ripe when the alleged taking occurs.

Plaintiffs argue that their takings claim did not accrue or become ripe for review until 2018, three years after they filed their federal lawsuit. This argument is incoherent, inconsistent with the law of the case as established in *Fowler I*, and barred by judicial estoppel. A *per se* takings claim is ripe for review when the alleged taking occurs, and it accrues when the plaintiffs know they have been injured. The alleged taking here occurred in the 1990s, and plaintiffs testified that they knew about their injury in 2006. The statute of limitations expired in 2009.

In *Fowler I*, this Court held that the prudential ripeness concerns reflected in *Williamson County* did not apply to plaintiffs' *per se* takings claim. If the government directly takes a person's property, as alleged in this case, a court need not wait for further government action(s) to determine whether a regulation that

restricts the use of property goes too far. "A *per se* taking triggers a 'categorical duty to compensate the former owner under the Takings Clause." *Fowler I*, 899 F.3d at 1117 (citations omitted). "Here," the Court continued, "the Teachers bring a *per se* taking claim because DRS's withholding of interest earned on funds in interest-bearing accounts is a direct appropriation of private property." *Id*. After discussing cases in which the U.S. Supreme Court considered state IOLTA programs, it concluded:

> DRS's withholding of the interest accrued on the Teachers' accounts constitutes a *per se* taking to which *Williamson County*'s prudential ripeness test does not apply. The district court erred in dismissing the Teachers' takings claim as prudentially unripe.

*Id*. at 1118.

### 3. This Court's ripeness holding in *Fowler I* is the law of the case.

Under the law-of-the-case doctrine, "an appellate court does not reconsider matters resolved on a prior appeal." *Jeffries v. Wood*, 114 F.3d 1484, 1488–89 (9th Cir. 1997), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012). The doctrine "'states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.'" *Jeffries*, 114 F.3d at 1489 (citations omitted). This promotes efficiency and serves to maintain consistency. *Id*.; *accord Ingle v. Cir. City*, 408 F.3d 592, 594 (9th Cir. 2005).

Although law of the case is a discretionary doctrine, discretion is limited. As this Court held in *Jeffries*, the prior decision should be followed unless (1) it is clearly erroneous and its enforcement would work a manifest injustice; (2) intervening controlling authority makes reconsideration appropriate; or (3) substantially different evidence was adduced at a later trial. 114 F.3d at 1489. None of these circumstances are present here, and plaintiffs do not attempt to show that they are. Nevertheless, plaintiffs ask the Court to revisit its ripeness ruling and to determine that the 2018 Rule, rather than the *per se* taking they alleged, made their claim ripe for review. Even if the Court were inclined to take a different approach to ripeness at this point, the law of the case on ripeness was established by *Fowler I*.

**4. Judicial estoppel bars plaintiffs from contradicting the arguments they advanced successfully in *Fowler I*.**

In *Fowler I*, this Court accepted plaintiffs' arguments—arguments developed in their briefs and, before that, presented in their district-court briefing. *See* 4-SER-765–66; 2-ER-302 ("This case is a 'categorical' or '*per se*' taking case, not a regulatory taking case," and none of the ripeness concerns of a regulatory taking case apply); 1-SER-045 ("no matter how defendant chooses to implement RCW 41.50.033, she cannot by rule take away the constitutionally protected property right to interest.").

Now, however, plaintiffs try to walk back the arguments that carried the day in *Fowler I*. They assert that this Court based its ripeness determination on the fact that the Director had recently published her rule on interest. Blue Br. at 23. Not so. The Court reversed the district court because, it held, the district court had (in 2015) misinterpreted the nature of the plaintiffs' claim, which was for a *per se* or categorical taking. Plaintiffs also assert that the Court decided "this case was not subject to the second part of *Williamson County*'s regulatory taking" analysis, while leaving open its requirement of finality. Blue Br. at 23–24 (emphasis original). Wrong again. This Court rejected every part of the district court's application of *Williamson County* to the takings claim asserted here, tartly observing that "this line of jurisprudence is not applicable when the government directly takes a person's property." 899 F.3d at 1117.

As noted above, judicial estoppel prevents a party "from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. at 749. For plaintiffs to argue in this appeal that their claim was not ripe for adjudication when they filed it in 2015, despite having earlier convinced this Court that the claim was then ripe, violates every principle underlying the doctrine of judicial estoppel. *See*, *e.g.*, *Russell v. Rolfs*, 893 F.2d at 1037.

**5.     Plaintiffs' argument is both illogical and contrary to governing law.**

Plaintiffs assert that "a claim that was once ripe for review in state court became unripe due to actions of the Washington Legislature and the Washington court of appeals, and the Director's response to the *Probst I* remand." Blue Br. at 24. Ripeness is not like the wind, which comes and goes. There is no authority for the proposition that a claim, once ripe, can become unripe for several years and then ripen again. Plaintiffs conflate the claim they assert, for a *per se* taking that occurred in the late 1990s, with a claim they have never asserted, for an injunction that would bar enforcement of the 2018 Rule.[18]

Because, as this Court held in *Fowler I*, prudential ripeness does not apply to plaintiffs' claim, the only kind of ripeness relevant here derives from Article III. Article III ripeness doctrine aims to avoid premature adjudication, to prevent entanglement in abstract disagreements, and to protect agencies from judicial interference until a decision has been formalized and its effects felt in a concrete way. *Manufactured Home Comm. v. City of San Jose*, 420 F.3d 1022, 1033 (9th Cir. 2005). As plaintiffs have long claimed to have suffered concrete injury as a result of an interest-crediting policy DRS adopted in 1977 and applied to them more than 25

---

[18] The 2018 Rule was changed in 2022, as plaintiffs acknowledge, and now provides for daily interest. Blue Br. at 15–16.

years ago, there is great irony in their current contention that their takings claim did not ripen until 2018. That contention is simply not credible.

Plaintiffs' contention is also belied by the cases they cite. In *Norco Constr. v. King County*, this Court pointed out that <u>federal</u> law "determines when the state limitations period begins for a claim under 42 U.S.C. § 1983"—i.e., when the claim accrues. 801 F.2d 1143, 1145 (9th Cir. 1986). <u>State</u> law—or, as plaintiffs put it, "actions of the Washington Legislature and the Washington court of appeals, and the Director's response to the *Probst I* remand" (Blue Br. at 24)—does not.

The Court in *Norco Construction* continued: "A federal claim is generally considered to accrue when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *Id.* (citations omitted). Plaintiffs' federal takings claim accrued no later than 2006, but they did not file their federal lawsuit until nine years later. By then, the statute of limitations had long since expired.[19]

Plaintiffs argue that, because they are beneficiaries of an express trust, the statute of limitations does not begin to run until there has been a repudiation of the trust. Blue Br. at 27. Plaintiffs did not preserve this argument by raising it below.

---

[19] Although plaintiffs argue that the Washington Court of Appeals' decisions in *Probst I* and *Probst II* somehow rendered their federal takings claim "unripe," the statute of limitations on their takings claim expired three years before the 2012 decision in *Probst I* and five years before the 2014 decision in *Probst II*.

Even if they had, the argument would fail. The rule they invoke applies only where a trustee terminates or repudiates an express trust. *See, e.g.*, *Skok v. Snyder*, 733 P.2d 547, 549 (Wash. Ct. App. 1987); *Goodman v. Goodman*, 907 P.2d 290, 294 (Wash. Ct. App. 1995). That rule does not apply to retirement trust funds created and governed by statute. *See* WASH. REV. CODE § 41.50.075(2) (requiring assets of TRS funds to be maintained in the state treasury); WASH. REV. CODE §§ 41.50.080 & 43.33A.030 (trusteeship of TRS funds is vested in voting members of the State Investment Board).

Plaintiffs are not the first ones to invoke express-trust rules in bringing claims against DRS. Faced with the same argument, the Washington Court of Appeals held that "the statute of limitations for a breach of trust is irrelevant." *Retired Pub. Employees Council v. State*, 16 P.3d 65, 68 (Wash. Ct. App. 2001); *see also Washington Fed'n of State Employees v. State*, 26 P.3d 1003, 1005 (Wash. Ct. App. 2001) ("PERS 1 is a defined benefit plan and not an express trust"). The Washington Supreme Court has also rejected the argument plaintiffs advance here. In *Bowles v. Washington Dep't of Ret. Sys.*, 847 P.2d 440, 454 (Wash. 1993), it refused to adopt the statute-of-limitations rule applicable to express trusts. Plaintiffs' failure to disclose controlling adverse authority violates their duty of candor to this Court.

**C.** **Absence of harm due to DRS's alleged taking provides an alternative basis to affirm.**

This Court may "affirm on any ground supported by the record even if not explicitly relied upon by the district court." *Johnson v. Barr*, 79 F.4th 996, 1003 (9th Cir. 2023) (citing *CFPB v. Gordon*, 819 F.3d 1179, 1187 (9th Cir. 2016)); *see also Johnson* at 1006 n.1 (relying on alternative grounds). In this case, the evidence shows that plaintiffs suffered no harm when their accounts were transferred from TRS Plan 2 to TRS Plan 3. Having received far more than the amount of interest they claim DRS wrongly failed to credit to their individual accounts, plaintiffs cannot establish an unconstitutional taking.

**1.** **Standard of review**

A grant of summary judgment, such as the district court's 2021 interim order granting plaintiffs' motion for partial summary judgment, is reviewed de novo. *E.g.*, *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). The court views the evidence in the light most favorable to the nonmoving party. Evidentiary decisions made in the context of summary judgment motions are reviewed for an abuse of discretion. *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir. 2001). A "district court abuses its discretion if it applies an incorrect legal standard to decide an issue." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

The Director need not have filed a cross-appeal to challenge the district court's interim order. Indeed, a prevailing party may not cross-appeal. *See United States v. Good Samaritan Church*, 29 F.3d 487, 489 (9th Cir. 1994). While not aggrieved by the district court's final judgment dismissing plaintiffs' claim, the Director may assert an alternative basis to support that judgment. *See Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 539–40 (5th Cir. 2022); *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999).

### 2.  To prove a compensable taking requires proof of a net loss.

"The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.'" *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 235 (2003) (citation omitted). This Court held in *Fowler I* that plaintiffs state a takings claim. But to recover for such a claim, "any pecuniary compensation must be measured by [a plaintiff's] net losses . . .. For that reason, . . . if [a plaintiff's] net loss was zero, the compensation that is due is also zero." *Id.* at 237. Thus, plaintiffs must prove they suffered a "net loss" to recover for an unconstitutional taking. Further, because they seek "an injunction ordering the Director to return savings taken from them . . . [r]ather than requiring payment of funds from the State's treasury," *Fowler I*, 899 F.3d at 1120, they must prove that the monies remain in the TRS Plan 2/3 trust fund and have not already been distributed to them.

The net-loss test derives from the principle that a party "'is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more.'" *Brown*, 538 U.S. at 236 (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)). In *Brown*, "just compensation [was] measured by the net value of the interest that was actually earned by petitioners." *Id.* at 238 n.10. "Net value" there meant the interest after "deducting transaction and administrative costs and bank fees." *Id.* There are no such costs and fees here, so whether there was a net loss must be determined differently. But the same principle applies. Looking at the transaction as a whole shows that plaintiffs received all the money that the TRS Plan 2/3 trust fund arguably saved because of DRS's interest-crediting policy, plus much more.

### 3.    Plaintiffs suffered no net loss.

Plaintiffs seek the "gross loss" of uncredited interest while they were in TRS Plan 2. That, however, did not constitute a net loss either before or after they transferred to TRS Plan 3. Plaintiffs suffered no pecuniary loss due to the absence of daily crediting of interest while they were members of TRS Plan 2, because the defined retirement benefit to be paid under Plan 2 is not affected by the amounts in individual accounts (including interest). Plaintiffs suffered no net loss due to DRS's interest-crediting policy when their accounts were transferred into TRS Plan 3, either, because of the large Transfer Payments they received at the same time.

- 46 -

Any determination of "net loss" must account for all aspects of the relevant transaction. Plaintiffs' transfer from TRS Plan 2 to TRS Plan 3 entitled them to large Transfer Payments from the commingled Plan 2/3 trust fund, and those payments more than compensated them for any uncredited interest. Class members received more than $300 million in Transfer Payments. 1-SER-253, ¶ 23. The amount of uncredited interest claimed here is some $6 million, or 2% of that amount. *See* 1-SER-214, ¶ 7.

Although plaintiffs have argued that the concept of net loss under *Brown* is limited to deducting administrative fees from small amounts of interest, 3-SER-696–98, that is wrong. The net-loss test derives from the principle that a party "'is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more.'" *Brown*, 538 U.S. at 236.

### 4. The Director demonstrated that plaintiffs could not meet their burden to prove a net loss.

The Director introduced evidence showing that statutorily mandated Transfer Payments acted as a balancing item that allocated all available funds to TRS Plan 2 members when they transferred their accounts to TRS Plan 3. This included funds that would otherwise have been used to credit daily interest, had that been DRS's policy. As a result, plaintiffs were put at least in "as good a position pecuniarily as if [their] property had not been taken." *Id.*

This evidence also showed that plaintiffs were not entitled to the injunctive relief they were seeking. Plaintiffs alleged that their "property remains in the wrong account, i.e., the interest remains in the TRS Plan 2/3 fund rather than the Plaintiffs' individual TRS Plan 3 defined contribution accounts." 2-ER-360. They sought an order to "transfer the funds calculated as remaining in the TRS Plan 2/3 account . . . to the Plaintiffs' TRS Plan 3 accounts." 2-ER-364. Because they already received all monies in the TRS Plan 2/3 trust fund that were available to be allocated at the time of transfer, plaintiffs could not prove that additional money was available or that it would be just for them to receive more.

One of the principles followed in developing TRS Plan 3 was that it had to be "cost neutral": (1) the State could not gain through the creation of the new plan; (2) employer contributions should not increase; and (3) employer contribution rates, paid on the compensation of both TRS Plan 2 and TRS Plan 3 members, should be the same. 1-SER-258, ¶ 12; 2-SER-281, ¶ 21. To prevent the State from gaining in the transaction, the amount of excess assets over those required to fund the two percent defined benefit for members of TRS Plan 2 and the one percent defined benefit for members of TRS Plan 3, plus the sum of the amounts in the accumulated accounts of transferring members, would be "paid" to persons who chose to transfer within a defined window. This was the "Transfer Payment."

Initially, the State Actuary calculated that if transferring members received their prior TRS Plan 2 contributions with 5.5 percent interest (under the then-existing methodology for calculating regular interest), plus 20 percent of the balance of their accumulated contributions as of January 1, 1996 (i.e., a 20 percent Transfer Payment), then the excess would be fully distributed and there would be no gain to the State. 2-SER-281–82, ¶¶ 22-23. But as economic and demographic conditions changed, the State Actuary calculated that the amount of the Transfer Payment should be increased to 65 percent of the balance on January 1, 1996. 1-SER-258–59, ¶ 14.

The significance of calculating the Transfer Payment as a balancing item is this: all funds that could be allocated to the plaintiffs were, in fact, allocated to them. 1-SER-259, ¶ 15; 2-SER-283, ¶ 26 (Transfer Payment balancing item "allowed each transferring member to be allocated the maximum amount available"). The State's method of calculating Transfer Payments meant that they necessarily included all money that might otherwise have been allocated to interest but was not so applied (the claimed daily interest). 2-SER-283–84, ¶ 27; 1-SER-259, ¶ 16.

The evidence the Director introduced—contemporary documents, percipient witness testimony, and expert testimony—demonstrated that plaintiffs did not, and could not, meet their burden to prove they suffered a net loss from any failure to pay

- 49 -

daily interest when they were in TRS Plan 2, thanks to the large Transfer Payments they received when they transferred to TRS Plan 3.

### 5. The district court erred when it refused to consider the Director's evidence.

The district court ruled that it could not consider the Director's evidence showing no net loss:

> The Court concludes that the legislative text is not ambiguous and therefore does not consider legislative history or DRS's expert declarations regarding that legislative history. The available evidence in the record demonstrates that though the Legislature created a legal right to very substantial Transfer Payments as an incentive for members who transferred from Plan 2 to Plan 3, the Legislature did not, and DRS did not, allocate the daily interest earned on Plan 2 accounts.

1-ER-30. Because the Director's "theory to explain a lack of pecuniary loss" was "not available as a matter of statutory construction," and because there was "no other basis in the record to conclude that the Fifth Amendment's Just Compensation Clause was not violated," the district court concluded that plaintiffs had "established a pecuniary loss and a complete *per se* takings claim, as a matter of law." *Id.*

In reaching these conclusions, the district court committed two errors. First, the court wrongly assumed that evidence drawn from legislative history can be considered only when a statute is ambiguous and requires construction. To the contrary, documents relevant to a federal cause of action should not be ignored just because they could, in another case, be invoked to construe a state statute.

Second, the district court erred when it described the Director's use of the legislative history as supporting her "statutory interpretation argument." 1-ER-28. In opposing plaintiffs' motion for summary judgment on the merits, the Director used documents and testimony reflecting legislative history principally to support her constitutional argument regarding net loss. 2-SER-495–530.[20] The issue before the court—the impact of the Transfer Payments on the TRS Plan 2/3 trust fund and on plaintiffs' accounts—did not require interpretation of WASH. REV. CODE § 41.32.8401.

The district court should have recognized the Director's evidence as supporting her argument that plaintiffs had suffered no net loss rather than an argument about statutory meaning. After all, the question before the court was not how to interpret the statute, but where the funds that WASH. REV. CODE § 41.32.8401 allocated came from and what impact the required transfer had on the trust fund as well as on individual accounts. The Director's evidence satisfied the relevance standard in Rule 402 of the Federal Rules of Evidence.[21] Indeed, the court

---

[20] As a secondary argument, in response to plaintiffs' assertion that the legislative history could not be used unless WASH. REV. CODE § 41.32.8401 was ambiguous, the Director pointed out that the statute was, in some respects, ambiguous. *See* 2-SER-524–25.

[21] Rule 402 makes relevant evidence admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by U.S. Supreme Court provide otherwise. Absent from this list is any reference to state law. *See* 19

acknowledged that "DRS's account of the legislature's intent [to use the Transfer Payments to transfer all available funds to Plan 3 members] is entirely plausible." 1-ER-29. The court should have considered the evidence, for it showed DRS's account to be not just plausible but true.

In sum, evidence showing the connection between the amount of plaintiffs' contributions (plus regular interest) transferred to TRS Plan 3 and the amount of the Transfer Payments they received establishes that plaintiffs incurred no net loss when they moved to TRS Plan 3. The fact that plaintiffs received far more than their claimed loss of daily interest provides an alternative basis to affirm the district court's judgment in favor of the Director.

## VII. CONCLUSION

The district court's final judgment dismissing plaintiffs' takings claim should be affirmed.

DATED this 21st day of March 2024.

Respectfully submitted,

K&L GATES LLP

By: */s/ Robert B. Mitchell*
    Robert B. Mitchell, WSBA No. 10874
    Christopher M. Wyant, WSBA No. 35561
    Todd L. Nunn, WSBA No. 23267

---

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE JURISDICTION § 4512 (3d ed.) (Apr. 2023 update).

925 Fourth Avenue, Suite 2900
Seattle, WA  98104-1158
Tel: 206-623-7580
Fax: 206-623-7022
rob.mitchell@klgates.com
chris.wyant@klgates.com
todd.nunn@klgates.com

925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Phone: (206) 623-7580

*Attorneys for Appellee Tracy Guerin*

**CERTIFICATE OF COMPLIANCE
PURSUANT TO FED. R. APP. P. 32**

CASE NUMBER 23-35414

Pursuant to Fed. R. App. P. 32(a)(7)(C) and 32(g), I certify that the appellees' brief is proportionately spaced, has a typeface of 14 points or more, and contains 12,594 words.

March 21, 2024___                              *s/ Robert B. Mitchell*
Date                                           Signature of Filing Party

## CERTIFICATE OF SERVICE

U.S. Court of Appeals Docket No. 23-35414

I hereby certify that on March 21, 2024, I arranged for the foregoing document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Signature:     *s/ Robert B. Mitchell*